## CHAPMAN et al. v. ANDERSON.

(Court of Appeals of District of Columbia. Submitted December 3, 1924. Decided January 5, 1925.)

### No. 4108.

1. **Malicious prosecution** ⟳56—**Matters to be proved stated.**

In action for malicious prosecution, plaintiff must prove that he was prosecuted, that defendant was the prosecutor or instigated its commencement, that it finally terminated in his acquittal, that charge preferred against him was unfounded, that it was made without reasonable or probable cause; that defendant was actuated by malice, and that damages conforming to legal standards resulted to plaintiff.

2. **Malicious prosecution** ⟳16—**Either probable cause or want of malice defense.**

In action for malicious prosecution, defendants can defeat recovery by showing that they had probable cause, or that they acted bona fide, without malice, and need not show both conditions.

3. **Malicious prosecution** ⟳32—**Malice presumed from lack of probable cause.**

Malice may be presumed from lack of probable cause, if not inconsistent with other facts.

4. **Malicious prosecution** ⟳23—**Lack of probable cause not inferred from malice.**

Lack of probable cause cannot be inferred from presence of malice.

5. **Malicious prosecution** ⟳71(3)—**Malice question for jury.**

Question of malice is one of fact for jury.

6. **Malicious prosecution** ⟳71(2)—**Probable cause question of law, if facts are undisputed.**

Question of probable cause is a question of law for the court, if the facts are undisputed; but, if existence of facts from which probable cause or want thereof is to be determined is in dispute, the question is one for the jury, under instructions stating such facts embraced within record as would constitute probable cause.

7. **Malicious prosecution** ⟳22—**Advice of prosecuting attorney held probable cause.**

Defendant, who told prosecuting attorney all material facts showing plaintiff guilty of larceny, and who was told by prosecuting attorney that plaintiff was guilty of larceny, and who received slip authorizing warrant clerk to issue warrant, had probable cause for prosecution as a matter of law.

8. **Malicious prosecution** ⟳71(2)—**Refusal to instruct facts proved constituted probable cause held error.**

In action for malicious prosecution for larceny, refusal to instruct jury that certain facts, if proved, would constitute larceny, and probable cause as a matter of law, held error.

Appeal from the Supreme Court of the District of Columbia.

Action by Edna F. Anderson against J. Edward Chapman and another. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

J. B. Carter and G. V. Triplett, Jr., both of Washington, D. C., for appellants.

H. H. Benjamin and T. M. Baker, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, VAN ORSDEL, Associate Justice, and BLAND, Judge of the United States Court of Customs Appeals.

BLAND, Acting Associate Justice. This is an appeal from the judgment of the Su-

preme Court of the District of Columbia in favor of plaintiff (appellee) in the sum of $2,500 damages on account of malicious prosecution. Defendant Chapman is a retail coal dealer in Washington, D. C. Defendant Collis is an employee of Chapman.

On November 25, 1922, plaintiff's husband, W. T. Anderson, in defendant's office, asked to purchase a ton of hard coal for use in a latrobe. Defendant informed him that he was unable to supply him with hard coal, and he purchased a half ton of coke, for which he paid $8.50 cash. The coke was delivered, and two days later Anderson returned to defendant's office and advised the clerk that he had had difficulty in burning the coke, and again sought to purchase hard coal. While it is a matter of dispute as to just what conversation took place at this time, it is contended by defendants that he asked for the hard coal to mix with the coke. The clerk informed him that he had no hard coal, and Anderson stated that he had sick children in the house and was very much in need of the fuel. Collis came in, and upon hearing the conversation advised Anderson that he would scrape the bins and send him a ton of hard coal, even though some one else had to wait. Nothing was said by Anderson about taking back the coke. He stated that he thought probably, if he made a lot of noise about the coke, they would not let him have the coal, that he knew the coal was to be sent to him C. O. D., and that the price was $15.

On November 27th the ton of hard coal was delivered at Anderson's home on a C. O. D. ticket calling for the payment of $15. Anderson left with his wife the sum of $7, which amount he told her to pay to the driver, and further told her to tell the driver to take the coke back. The driver arrived with the ton of coal, and there is some little conflict in the testimony as to what happened, but the witnesses are substantially in agreement. He was told by Mrs. Anderson to dump the coal in the garage. He did so, and the plaintiff locked the doors of the garage. She offered him $7, and told him he could take back the coke for the remaining $8. The driver explained that he could not do that; that he had to take the $15 or ·the coal. Plaintiff would not give him the coal or the $15, and said she was instructed so to do by her husband. The driver states that, before he unloaded the coal, plaintiff had some money in her hand, but that she did not tender· it to him until after the garage doors had been locked. This the plaintiff did not deny. The driver states that he

3 F.(2d)—22

knew nothing about the coke transaction. It was a rule at the coal office that, if a driver failed to get the money, it was charged to him. After calling the clerk in the office, the driver returned to the coal yard with the $7. Defendant Collis testified that he asked Keyes why he did not get the money before he unloaded the coal, and Keyes replied that the garage was narrow and he had seen the money, and Mrs. Anderson told him to pull outside and she would pay him.

The driver and defendant Collis on the same evening visited plaintiff's home in an attempt to collect the $8. Being unsuccessful, Collis probably threatened her with the law. He told her it was a poor way of getting coal, and that she could not buy any more coal from Chapman or any one else, unless she paid the balance on the order. The evidence indicates that the feelings between the parties were anything but friendly.

The two defendants consulted at their office, and it was agreed that Mr. Collis should take the matter up with Mr. Given, the Assistant United States District Attorney. Collis states that he related to Given the facts that had been related to him by the ' driver of the coal wagon. The record narrative of the testimony of Collis on this subject is as follows:

" * * * Two or three days after that, witness went down and saw Mr. Given and explained the case to him. Told Mr. Given about the colored man delivering the ton of coal to Mrs. Anderson; that she had told him to pull outside, and had then locked the door. He explained about the coke; that Anderson had gotten a half ton of coke before that, and did not make any complaint about it at the office, but took out for the price of it at the time the ton of coal was delivered, giving the balance of $7 to the driver. Mr. Given asked him how much the balance due on the coal amounted to, and he said $8, which was the price for a half ton of coke. He told Mr. Given the Andersons had offered to send the coke back, but that he considered that a closed matter. Mr. Given said the coke had nothing to do with the coal. Asked how much the coal cost and witness told him it was $15 and was sent out C. O. D. Mr. Given gave him a card and told him to take it down to the warrant clerk and the warrant clerk would give him a warrant. Thinks Mr. Given wrote larceny on the card. Witness went down to the warrant clerk and explained to him what Mr. Given had told him. Told the warrant clerk the same thing he had told Mr. Given.

The warrant clerk wrote out the warrant and also the affidavit, after the witness had stated to him the same facts that he had stated to Mr. Given. It was the only thing witness knew to tell him. Never did tell Chapman he was going to swear out the warrant, and Chapman did not know he had sworn it out until the case in police court had been called; then witness told him all about it. Witness had never seen Mrs. Anderson before that. He did not bear any malice toward her, as he did not even know her. In swearing out the warrant he acted solely on the advice of Mr. Given. If Mr. Given had not told him to get out the warrant, the matter would have been closed. Witness heard Mrs. Anderson testify in this trial, and the facts which witness told Mr. Given were the same that Mrs. Anderson related on the witness stand, as to what happened. * * * Witness identified his signature to the affidavit on which the warrant for Mrs. Anderson was issued. Also identified Mr. Gott as the warrant clerk. Said he stated to Mr. Gott the same facts he stated to Mr. Given. Did not read over the affidavit after Mr. Gott had prepared it."

The narrative testimony in the record of witness Ralph Given is as follows:

"That he was Assistant United States Attorney, and had been for 17 years; that he had been in that line of work for 30 years; that he was Assistant United States Attorney in November, 1922. Witness remembered seeing defendant Collis; did not recall exact date, but remembered defendant Collis coming to his office. It was some time in the latter part of 1922. He was not certain whether Collis came alone, or whether there was a colored man with him. Was under the impression that he talked to the colored man too, but he might be mistaken. Knows that Mr. Collis talked to him, and said something about the controversy over a C. O. D. order for some coal. Can't recall very clearly what he said, but he knows that Mr. Collis talked to him about the coal transaction; said there had been a C. O. D. order sent to a house, meaning the home presumably of Mr. Anderson; that the colored man had been sent with the C. O. D. order, and had delivered the coal, but when he went to collect the bill he was refused the money. Told witness that some money had been paid, but that the purchaser had some claim of some kind that they had made and held out some of the money. Asked Collis if the colored man was responsible for the C. O. D. ticket if he lost the money, and was informed that he was. Then asked if the

colored man had made a demand for the return of the coal, and was informed that he had. Told Collis if it was a C. O. D. order, and Mrs. Anderson had accepted the coal and had refused to allow it to be taken back, and had refused to pay for it, that he might have a warrant for larceny. Gave them a slip to the warrant clerk calling for a warrant for larceny. Witness usually determined the grade of the offense and the character of an offense for which a warrant would be issued. The warrant in this case was made out for the larceny of money of the value of $8, and the information was for the larceny of coal of the value of $8. Witness states that it should have been for the larceny of coal. Witness explained the mistake by the fact that he put on the slip simply the word 'larceny' instead of designating 'larceny of coal,' thinking the clerk would catch it up, as he always made inquiry. Witness stated that the information is the guiding paper, and that the issuance of the warrant for the larceny of money was a mere error; that the information would carry the charge as they thought fit and proper to file it. Witness stated to Collis that on the theory that it was a C. O. D. order, and demand had been made, and Mrs. Anderson deliberately kept the coal, and the colored man was responsible, he believed that Mrs. Anderson had been guilty of larceny.

"On cross-examination, witness stated that he was not absolutely certain that that was all that was told him, as there might have been some little things that he did not remember; that he did remember there was a colored man who was the driver, and that he understood the driver was responsible, and under these circumstances, he was entitled to his warrant. He knew the driver was connected with the matter in some way, but was not sure whether the driver came to his office. Witness was told that the $8 had been charged to the driver. Stated that if it had come to a question between the dealer and the purchaser, he might have hesitated a bit. Witness was unable to identify the driver, Keyes, in court. Witness stated that he did not have in his possession the slip he had sent to the warrant clerk, as they were not always kept permanently; they were kept for a while, but sometimes destroyed or lost. The warrant was issued on the affidavit and not on the slip. The clerk fills out the affidavit. He left it with the clerk whether or not to make the warrant for larceny of money or of coal. Presumed Collis went down to the warrant clerk to

swear out a warrant for larceny of coal and made a statement to the clerk and an affidavit; could not get the warrant unless he did do that. Thinks the error might have come from the fact that the clerk was possibly not as well versed in these matters as he might have been, and a C. O. D. transaction of this sort was not an everyday occurrence. Supposed the clerk took it to be larceny of money. Said he presumed the issuance of the warrant for money instead of for coal was an error, but did not know just whose error it was. The affidavit is presented to the party for signature before the warrant is issued. Considered Mr. Gott, who was then the warrant clerk, a reasonably careful man in the discharge of his duties; had been warrant clerk for 6 or 7 years. Witness said Collis told him something about the claim of Mrs. Anderson for some dirt or dirty coal or something that could not be burned; similar to that.

"On redirect examination, witness admitted that it might have been coke that was the subject of the claim that Collis mentioned to him.

"On recross-examination, witness said he went into the point with Collis as to the merits of the controversy so far as it involved the responsibility of the colored man. He says, if he had known that the colored man would not have been held responsible, he would have probably hesitated."

Upon the affidavit made by Collis, a warrant was issued and served, and the plaintiff was tried in a police court and acquitted. Appellants have assigned eight errors upon which they seek reversal. It will be necessary to notice but four of them:

"(5) The court erred in failing to direct a verdict for both defendants at the conclusion of all the evidence, because: (a) The evidence failed to show want of probable cause for the procurement by defendants of plaintiff's arrest on the charge of larceny, or malice on the part of either defendant in connection with such action. (b) The evidence established facts proving the actual guilt of the plaintiff of the charge on which she was arrested and tried. (c) The warrant for plaintiff's arrest was procured only after a full and fair statement of all material facts had been made by defendant Collis to the Assistant United States District Attorney, and said official had authorized the issuance of the warrant.

"(6) The court erred in refusing defendant's offered instruction No. 4, for the reason that the jury should have been told what facts in this case would constitute probable cause.

"(7) The court erred in refusing defendant's offered instruction No. 5, because the jury should not have been allowed to speculate as to what facts, if stated to the Assistant United States District Attorney prior to the issuance of the warrant, would have been material on the question of probable cause, but should have been furnished a guide for the ascertainment of said facts, in order to determine whether a full and fair disclosure was made to the Assistant District Attorney.

"(8) The court erred in refusing defendant's offered instruction No. 8 for the reason that the jury were entitled to know what facts, if proven, would have constituted plaintiff's guilt of the charge upon which she was arrested and tried, in order that they might determine the question of probable cause.

[1-4] To support an action for a malicious criminal prosecution, the plaintiff must prove the fact of prosecution, and that the defendant was himself the prosecutor, or that he instigated its commencement, and that it finally terminated in his acquittal. He must also prove that the charge preferred against him was unfounded, and that it was made without reasonable or probable cause, and that the defendant in making or instigating it was actuated by malice, and that damages conforming to legal standards resulted to the plaintiff. Wheeler v. Nesbitt et al., 65 U. S. 544, 16 L. Ed. 765. For the defendants to succeed in the action, it must appear that they had probable cause for the prosecution of the plaintiff for the offense described in the complaint and warrant, or that they acted bona fide without malice. They do not have to show both of these conditions. If they show either, their defense is complete. Malice may be presumed from the lack of probable cause, if not inconsistent with other facts in the case. Lack of probable cause cannot be inferred from the presence of malice. Wheeler v. Nesbitt, supra.

[5] The question of malice is a question of fact for the jury. "The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to show it probable or true, and existed, is a matter of fact; but whether, supposing them to be true, they amount to probable cause, is a question of law." Stewart v. Sonneborn, 98 U. S. 187, 25 L. Ed. 116, and cited cases; Staples v. Johnson, 25 App. D. C.

155; Markley v. Snow, 207 Pa. 447, 56 A. 999, 64 L. R. A. 685.

[6] During the consideration of this case we have entertained some doubts as to whether the question of probable cause was a mixed question of law and fact or a question of law only. The knowledge which defendant Collis acquired at Anderson's house, and the information obtained by him from the driver, Keyes, may be considered as evidence in determining whether or not Collis believed there was probable cause for the prosecution. Some parts of this evidence is conflicting. The advice of the Assistant United States District Attorney, which is the most important evidence on the subject in this record, of course, must also be considered. If only the testimony of Collis and Given on this question was before us, the same being undisputed, we would say, with more assurance than we do, that the question of probable cause was a matter of law for the court, and should not be submitted to the jury. What will constitute probable cause is defined in the books to be "the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the offense for which he was prosecuted." Cox v. Lauritsen, 126 Minn. 128, 147 N. W. 1093. But if there is disputed testimony, which should be heard by the jury in determining as to whether the prosecutor had probable cause, it certainly should be submitted to them under instructions by the court which state such facts, embraced within the record, as would constitute probable cause. It is a well-settled rule of law that, where the facts are ascertained, then the question of probable cause is a question of law, and it devolves upon the court to instruct the jury as to whether certain facts, if proven, amount to probable cause. Staples v. Johnson, 25 App. D. C. 155; Slater v. Taylor, 31 App. D. C. 100, 18 L. R. A. (N. S.) 77. In Cox v. Lauritsen, supra, the court said:

"Whether the undisputed facts are sufficient to constitute probable cause is a question exclusively for the courts, and, upon appeal, will be weighed in this court as if the case had been heard here."

In Staples v. Johnson, supra, the court held that, although probable cause was for the court, if the trial court erroneously submitted it to the jury, their action, if proper, would not be disturbed. There the Court of Appeals found as a matter of law that the facts in the case did not show probable cause, and agreed with the jury that there was malice.

[7] In most instances the courts have held, in malicious prosecution actions brought upon criminal prosecutions, that where the prosecutor stated all the material facts to the attorney charged with the responsibility of determining criminal liability, and he is by the attorney advised to prosecute, that probable cause exists, and the action from malicious prosecution cannot be maintained. The welfare of law-abiding people would receive a severe blow, if it were to become established law that one must be the insurer of the successful outcome of criminal charges preferred. The particular offense of larceny, in this case, is not of the sneak thief nor highwaymen variety, but is referred to in the books as larceny by a trick. In this case it is admitted that he did state to the prosecutor all the material facts which we think necessary to technically constitute the offense of larceny. Talbert v. United States, 42 App. D. C. 1; Crum v. State, 148 Ind. 401, 47 N. E. 833; Hays v. Stine (C. C. A.) 289 F. 224. The District Attorney advised defendant Collis that Mrs. Anderson was guilty of larceny, and authorized the issuance of a warrant. We think this constituted probable cause, and there was nothing elsewhere in the testimony relating to Collis which would change our view on this subject. The testimony as to the conduct of Collis might have weight in determining malice, but under the authorities he may have had great malice, and might have been vindictive and cruel, but nevertheless, if he had had probable cause, appellee could not recover. In Staples v. Johnson, where the court held that it was proper to submit to the jury the question as to whether the prosecutor had submitted all the facts to the attorney upon whose advice he acted, the court found affirmatively that he failed to tell the attorney that the employee had claimed that the employer owed him. In the case at bar, no material facts within the knowledge of the prosecutor tending to constitute the offense of larceny was by him omitted.

The conversation between Collis and the District Attorney being admitted as true, and covering all the essential facts to justify the opinion of the attorney, and having arrived at the conclusion that this constitutes probable cause, and that upon an agreed statement of facts, probable cause is a question of law exclusively for the court, we think the court erred in failing to direct a verdict for both defendants at the conclu-

sion of the evidence. We concede that the authorities are at slight variance, or at least are not clear, on this point; but under the facts in this case we think the weight of authority and the natural logic derived therefrom, compels the foregoing conclusion. If Collis had not stated the facts as they existed, or if he had left out material facts, then it might be a mixed question of law and fact for the jury to determine whether or not he had probable cause, which determination should be made under proper instructions from the court.

. [8] But if we consider this case from the viewpoint of the trial court, we think the court erred in refusing to give instructions Nos. 4, 5, and 8, which instructions were tendered by the defendants. The fourth instruction is with reference to probable cause for prosecution by the defendant, based upon facts other than his dealings with the District Attorney; the fifth instruction is with reference to probable cause based upon his statement to and advice from the District Attorney; and the eighth instruction has reference to what facts constitute larceny.

"(4) The court instructs the jury that if they believe, from the evidence, that the defendant, J. Edward Chapman, through his agents or employees, on or about the 29th day of November, 1922, delivered to the plaintiff, or at the plaintiff's residence, a ton of coal. with instructions to the driver of the truck or wagon making delivery that the coal was only to be delivered upon payment of the price therefor, to wit, the sum of $15, and that the plaintiff, having been advised by the said driver that the delivery was to be made only upon payment therefor, or to that effect, directed the driver to deposit the coal in the garage or building at her premises, and that she thereupon locked the door of said garage or building and refused to pay the driver the delivery charges for said coal, namely, the sum of $15, but tendered to the driver a smaller sum of money, and refused to permit the driver to take away the coal after it had been put into the garage or building, then the jury must find that the defendant had probable cause for the prosecution, and their verdict must be for the defendant."

"(5) The court instructs the jury that if they believe, from the evidence, that the defendant, Collis, reported to the Assistant United States District Attorney for the District of Columbia the fact that a C. O. D. load of coal had been sent to the home of the plaintiff by the defendant Chapman, and

that the plaintiff had directed the driver making the delivery to put the coal in a garage or building; that she had thereupon locked the door of the garage and had refused to pay the driver for the coal, or to permit him to take the coal away, but had tendered him $7 therefor, which was $8 less than the purchase price of the coal, and that the Assistant District Attorney thereupon advised the said Collis that the plaintiff was guilty of the crime of larceny or to secure a warrant charging the plaintiff with larceny, and the said Collis, acting under the said advice, procured a warrant to be issued, charging plaintiff with the commission of the offense of larceny, then the jury are instructed that such act constituted probable cause, and their verdict must be for the defendant."

"(8) The court instructs the jury that if they believe from the evidence that the plaintiff, Edna F. Anderson, on or about the 29th day of November, 1922, received from the defendant, J. Edward Chapman, at her home in the city of Washington, D. C., one ton of chestnut coal, and before the same was deposited on her premises signed a receipt therefor, attached to a C. O. D. ticket, which was presented to her by Louis Keyes, the driver who delivered said coal for the defendant, Chapman, which said ticket called for the payment of the sum of $15 on delivery of the coal, and that, after signing said receipt, plaintiff directed the driver to deposit the coal in the garage or building at the rear of her premises, advising him or indicating to him that she would thereupon pay him therefor; that the driver Keyes did put the coal in the garage, whereupon plaintiff locked the door and tendered Keyes the sum of $7, which was less than the purchase price of the coal, and of which fact the plaintiff was aware, and refused to pay him more than $7 or to allow him to take the coal from the garage, then the jury must find that the plaintiff was guilty of the offense of petit larceny, and that the defendants had probable cause for procuring her arrest on said charge, and their verdict must therefore be for the defendants."

Agreeable to our conclusions heretofore reached, it was not proper for the jury to be permitted to be the judges of the law on an ascertained statement of facts on the subject of probable cause or larceny. Horning v. District of Columbia, 254 U. S. 135, 41 S. Ct. 53, 65 L. Ed. 185; Bray v. United States (C. C. A.) 289 F. 329. It was certainly the duty of the court, if he let this case go to the jury at all, to instruct them

as to what facts ascertained from the evidence would constitute probable cause, and what facts within the record would constitute larceny. Mark v. Rich, 43 App. D. C. 182. The court, as a matter of law, should have told the jury that certain facts in the testimony, if proven, would constitute probable cause, and also the same with reference to larceny. The jury were, consequently, left to figure out for themselves whether the acts of plaintiff, as disclosed by the evidence, the pertinent parts of which are admitted to be true, were larcenous, and as to whether these agreed facts constituted probable cause. It is true that the court gave a general charge, and probably correctly stated the law in a general way as to probable cause; but, having permitted the question to go to the jury, we think erroneously, no doubt in the belief that probable cause as applied to the proven facts was a mixed question of law and fact, it should have been submitted to them only upon definite and specific instructions that certain facts proven in the evidence, if believed, constituted probable cause and a complete defense to the action. Stewart v. Sonneborn, 98 U. S. 187, 25 L. Ed. 116.

The judgment of the court in this case is reversed, with costs, and cause remanded for further proceedings not inconsistent with this opinion.