# Wytheville

PEOPLES LIFE INSURANCE COMPANY OF WASHINGTON, D. C.,
AND GEORGE ERNEST LILLEY v. WILLIAM I. TALLEY.

June 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn, and Eggleston, JJ.

The opinion states the case.

*A. A. Bangel,* for the plaintiff in error.

*James G. Martin & Son,* for the defendants in error.

CHINN, J., delivered the opinion of the court.

This is an action for slander and insulting words, brought by William I. Talley against the Peoples Life Insurance Company of Washington, D. C., and George Ernest Lilley. There was a verdict and judgment in the favor of the plaintiff for $600, and the case is before us on a writ of error to said judgment.

Talley had been employed by the Insurance Company for a number of years as a' soliciting and collecting agent, and Lilley was the local manager of its branch offices at Portsmouth, Virginia. The Insurance Company received two anonymous letters severely criticizing Lilley for lack of backbone, lack of respect by the agents, and the manner in which his office was run. The second of these letters, dated September 21, 1934, was mailed by the company to Mr. Lilley with its letter directing him to observe carefully the actions of his employees and make an effort to ascertain the author of the anonymous letter. Lilley compared the handwriting of the anonymous letter with the handwriting of letters written by said employees, which were at the time on file in the office, and concluded that a letter written by the plaintiff, Talley, strongly resembled the writing of the anonymous letter, and he

thereupon showed the two letters to the cashiers of three banking institutions in Portsmouth, who advised him that in their opinion they were written by the same person. Lilley then sent the anonymous letter and the letter in the handwriting of Talley to the president of the Insurance Company, stating that experts in handwriting had expressed the opinion that both letters were written by the same person, and asking him to also make a comparison. In reply Mr. Chiswell, president of the company, wrote Lilley that the two letters also looked to him as if they were written by the same hand and advised Lilley to discharge Talley, and assign either the writing of the letter or non-production as the reason for the discharge.

Lilley then called Talley into his private office and told him he was discharged because of non-production. Talley refused to accept this explanation as the real reason for his discharge, and insisted upon additional cause or causes. After the lapse of several days, Lilley showed Talley the anonymous letter and charged him with having written it, which Talley vehemently denied. Talley then told his fellow agents the reason he was being let out was because he was being charged with writing an anonymous letter. Talley's discharge was not to be effective for two weeks in order to give him time to make certain collections for which he was responsible. On Friday of each week it was customary for the agents of the company to assemble in a meeting room at the Portsmouth office where the business of the company in general was discussed by the local manager. On the Friday following the disclosure to Talley of the reason for his discharge, the usual meeting was held at the office, when Lilley discussed business affairs of the company according to custom. In closing his talk on this occasion, Lilley made the following statement in the presence of Talley and fourteen or fifteen other agents employed by the company:

"If any man has anything against me, I want him to come and tell me. I never treated a man wrong in my life. We are not going to stand for any undercover work

in this office. That is the reason Mr. Talley is being let out, and he can never work for the Peoples Life Insurance Company again."

The declaration contains two counts based upon the foregoing language; one count being for slander at common law, and the other for insulting words under the statute.

Several assignments of error are set forth in the petition, but in the view we take of the case it is only necessary to consider the contention of the plaintiffs in error that the trial court erred in overruling their motion to set aside the verdict of the jury as contrary to the law and evidence because the words declared on were qualifiedly privileged, and such being the case the plaintiff was not entitled to recover in the absence of proof of malice on the part of the defendants.

■ The rule is well settled that when the communication upon which the action is based is one of qualified privilege, the question is not whether the charge was true or false, but only whether the privilege was abused or the language, employed was uttered or published with malice, and unless there is evidence from which a jury may fairly conclude there was malice, there can be no recovery. *Aylor* v. *Gibbs,* 143 Va. 644, 129 S. E. 696, 697; *Chaffin* v. *Lynch,* 84 Va. 884, 6 S. E. 474; *Brown* v. *Norfolk, etc., Railway Co.,* 100 Va. 619, 42 S. E. 664, 60 L. R. A. 472; *Chalkley* v. *Atlantic Coast Line R. Co.,* 150 Va. 301, 143 S. E. 631, 632.

■ And it is exclusively a question for the court to determine whether the occasion on which the alleged defamatory statement was made was such as to render the communication a privileged one. *Aylor* v. *Gibbs, supra; Chalkley* v. *Atlantic Coast Line R. Co., supra.*

■ "A privileged communication is one made in good faith upon any subject matter in which the party communicating has an interest or in reference to which he has, or honestly believes he has, a duty, to a person having a corresponding interest or duty, and which contains

matter which, without the occasion upon which it is made, would be defamatory and actionable." Newell on Slander and Libel, (2d Ed.) page 388.

■ "Where the defendant acts in performance of a duty, legal or social, or in defense of his own interests, the occasion is privileged and there is a legal presumption that he acted without malice which the plaintiff must rebut by evidence." *Chalkley* v. *Atlantic Coast Line R. Co., supra.*

■■ "It is well recognized that when the words complained of are uttered upon an occasion of qualified privilege, then in order to recover it must appear from the evidence that the language used was disproportioned in strength and violence to the occasion, or went beyond the exigency of the occasion, or that the occasion was abused to gratify the ill will of the defendant; in other words, that the defendant was acting from actual malice. Strong and violent language or insinuations disproportionate to the occasion may raise an inference of malice and thus lose the privilege which might otherwise attach to the occasion. *Ramsay* v. *Harrison, supra* [119 Va. 682, 89 S. E. 977]; *Vaughan* v. *Lytton,* 126 Va. 671, 101 S. E. 865; *Robinson* v. *Van Auken,* 190 Mass. 161, 76 N. E. 601." *Aylor* v. *Gibbs, supra.*

In *Chalkley* v. *Atlantic Coast Line R. Co.,* 150 Va. 301, 143 S. E. 631, 632, it is said:

■ "Generally, of course, malice is a question of fact to be submitted to a jury, but where the communication is privileged, unless there is evidence from which a jury may fairly conclude that there was malice, there can be no recovery."

■ "It is said in *National Disabled Soldiers' League* v. *Haan,* 55 App. D. C. 243, 4 F. (2d) [436] 441, that 'if the plaintiff fails to offer evidence of an extrinsic character to prove actual malice on the part of the defendant, in the publication of a libel on a qualifiedly privileged occasion, and if the language of the communication and the circumstances attending its publication by the defendant

are as consistent with the non-existence of malice as with its existence, there is no issue for the jury, and it is the duty of the trial court to direct a verdict for the defendant.' "

■ Considering the evidence in the instant case, it is clear that the language upon which the action is based was uttered upon a privileged occasion.

· There is no doubt that someone had written an anonymous letter to the company seriously reflecting upon Lilley's fitness for his position as manager. He was, therefore, merely acting in conformity with his duty, and for the protection of his own interests and the interests of his company, in stating to his employees on the occasion in question that neither he nor his company would stand for any undercover work in the office, and that Talley had been let out for that reason—a fact which the agents to whom Talley made the statement already knew because they had been so informed by Talley himself.

■ The real question is, therefore, whether there is any evidence from which the jury might infer that Lilley was actuated by malice in making said statement. We do not think there is. It appears that Lilley made an honest effort to discover the writer of the anonymous letter in question by comparing the handwriting of all the other agents, by consulting experts, and by reporting what he had ascertained to the president of the company before he made the communication complained of. In other words, whether the statement to the effect that Talley had written the letter was true or false, it seems apparent that Lilley acted in good faith and in the honest belief that Talley did write the letter. Under these circumstances, there was nothing in the language used which can be said to have been disproportionate in strength or violence, or which went beyond the exigency of the occasion in question. Neither is there any extrinsic evidence found in the record of malice on his part towards Talley. On the other hand, it appears that both up to the time this letter came to light and subsequently, Lilley mani-

fested friendly and kindly feelings towards Talley and said or did nothing in so far as the evidence discloses which tended to show that he was actuated by any malice or ill will in uttering the words complained of.

. The following quotation from the opinion of Judge Keith, speaking for the court in the case of *Brown* v. *Norfolk & Western Railway Co.,* 100 Va. 619, 42 S. E. 664, 666, 60 L. R. A. 472, is pertinent here:

"The remarks of Judge Lewis in *Strode* v. *Clement,* 90 Va. 553, 19 S. E. 177, are applicable in this case: 'There is no extrinsic evidence of malice, such as an antecedent grudge, or previous disputes, or anything of that sort between the parties; but the contention is that the language used by the defendant is of itself evidence of malice. Undoubtedly strong or violent language disproportioned to the occasion may raise an inference of malice, and thus lose the privilege that otherwise would attach to it. But when the occasion is privileged, the tendency of the courts is not to submit the words to a too strict scrutiny, but rather to view them in the light of the facts as they appeared to the defendant, for the question is, not whether the imputations are true, but whether the words are such as the defendant might have honestly employed under the circumstances.' In this case there is no extrinsic evidence of malice, nor is the language complained of so violent or disproportioned to the occasion as to raise an inference of malice. In other words, there is no evidence of malice."

We are, therefore, of the opinion that there is no evidence in the record which is sufficient to carry the question of malice to the jury, and such being the case, the judgment of the lower court will be reversed, the verdict of the jury set aside, and judgment entered here for the plaintiffs in error.

*Reversed.*