**MAY DEPARTMENT STORES COMPANY, INC., t/a the Hecht Company, Appellant,**

v.

**Elsa V. DEVERCELLI, as Administratrix of the Estate of Rudolfo Devercelli, Appellee.**

**No. 6052.**

District of Columbia Court of Appeals.

Argued April 24, 1972.

Decided Dec. 14, 1973.

Rehearing En Banc Denied Feb. 13, 1974.

J. Roy Thompson, Jr., Washington, D. C., with whom John Jude O'Donnell, Washington, D. C., was on the brief, for appellant.

Paul Martin Wolff, Washington, D. C., for appellee.

Before GALLAGHER, NEBEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

This is an appeal from a judgment for $165,000 based on a verdict awarding appellee's decedent $25,000 compensatory damages and $50,000 punitive damages for

false imprisonment; $40,000 compensatory and $40,000 punitive damages for assault and/or battery; and $10,000 for insulting words. The action arose out of the apprehension, detention, and interrogation of appellee's decedent [1] by the employees of appellant for suspected "willful concealment" of merchandise.

Appellant primarily raises three contentions on appeal: (1) that the trial court should have ruled as a matter of law that appellant's employees had probable cause to detain and hold appellee's decedent for questioning; (2) that the civil release signed by him is a bar to this action; and (3) that the excessive award of damages was the result of passion and prejudice.

After a careful review of the record and a study of the authorities cited by both parties, we hold that the court should have directed a verdict for the appellant on count three as to statutory slander, we affirm the judgment as to liability on the first two counts, but remand to the trial court on the issue of damages.

On July 15, 1968, at approximately 6:30 p.m. the appellee's decedent (hereinafter Devercelli) and his wife went to appellant's Parkington store in Arlington, Virginia for a "Private After Hours Sale" pursuant to an invitation received by them. Devercelli's wife entered the store, but he decided to wait until most of the crowd had entered inasmuch as he had great difficulty in walking. He feared that if he fell down, in the push of the crowd, he would have difficulty arising due to physical disabilities, including partial paralysis, resulting from his onetime dependence upon an artificial kidney and more recently a kidney transplant. Upon entering the store, Devercelli was handed a shopping bag by one of two employees of the appellant who were greeting customers at the door. It was his understanding the bag was given to him "for shopping". Devercelli had bloodshot eyes; his arms were black and blue and showed visible scars of needle marks; he walked with a faltering gait; appeared nervous and moved in erratic patterns.[2] He proceeded to the men's department where he stopped at a table containing bargain ties. He selected four ties and placed them over his shoulder. He then went to the far end of the table, a distance of a few feet, where shirts were on display. From this point on there is some conflict in the testimony between Devercelli's version and appellant's. We therefore set forth the ensuing facts in the light most favorable to appellee.

Devercelli began to look at the shirts when according to his testimony a female employee of the appellant, later identified as a store detective, approached and began staring at his arms. Devercelli then told this employee about his medical condition and his use of the kidney (dialysis) machine which caused the marks on his arms. The employee, who denied such an encounter at trial, withdrew but continued to stare at his arms from behind another counter. Devercelli selected four shirts, placed them under his arm and walked to the end of the table where cuff links were on display. He began to select cuff links but the boxes had rounded tops causing one of them to fall. When he tried to catch it everything fell to the floor. As he picked up these items, he placed them all into the shopping bag furnished him by the store. He then selected more cuff links, while standing there, by comparing those on the counter with those in the bag and putting those he liked best in the bag. Having spent about ten minutes at the cuff link counter, he next turned to move to the belt counter at which point he was

---

1. Subsequent to the entry of judgment herein, Rudolfo Devercelli, the original plaintiff, passed away on June 2, 1971, and his wife as the administratrix of decedent's estate was substituted as appellee.

2. Testimony at trial, by Devercelli and his wife, revealed that all of these characteristics were directly or indirectly a result of his kidney troubles.

apprehended by two male store detectives [3] who asked no questions at the time but took him to the detention room on a lower level of the store.[4]

On the other hand, a store detective testified that Devercelli had not remained within the relatively small area of the men's department where shirts, ties, cuff links and belts were displayed, but that he had proceeded into the sporting goods department with his merchandise in hand and returned to the men's department with it in the shopping bag. He also testified that Devercelli was in front of the escalator when he was apprehended, having departed the cuff link counter.

At the detention room he was subjected to a search which revealed $3 in cash and a valid shopping plate. Devercelli was advised of his rights, and the crime of "willful concealment" was explained to him. He was interrogated at length including questions about his use of drugs and alcohol. Devercelli requested that he be allowed to call his employer and/or his wife, which request was denied.[5]

Before the questioning got under way, one of the detectives paced the floor slapping his gun. Later the detectives asked Devercelli to sign a civil release form, telling him more than once that he could not leave until he signed it and if

he refused he would go to jail. This he refused to do but, after about one and one-half hours elapsed, he reluctantly signed the release and was allowed to go free upon a cautioning that he should not mention the incident to anyone. He requested an apology from the detectives but none was forthcoming.

Counsel for both parties stipulated that on July 26, 1968, Devercelli wrote a letter to the appellant company concerning the foregoing incident requesting a letter of apology. He also asked the company to repudiate the action, conduct and statements of its employees and to inform him that it does not ratify the conduct of its employees on July 16, 1968. Although a company representative contacted appellee's lawyer, a letter was not forthcoming. This action followed.[6]

Appellant's first contention on appeal is that the trial court erred in not holding as a matter of law that the store detective had probable cause to believe appellee was committing or had committed the crime of willful concealment and therefore had the right under the Virginia statute to arrest, detain, and interrogate appellee.

The governing substantive law of this case is that of the lex loci, the State of Virginia, where the alleged tortious acts transpired.[7] The Virginia statutes

---

3. It developed that Devercelli had been under observation by store detectives since his entrance into the store due to his unusual appearance, faltering gait and nervous mannerisms.

4. There was conflicting testimony as to the extent of force used by the store detectives in taking Devercelli to the detention room. Devercelli testified that he was forced to walk at a pace much too rapid for his condition and that he was almost carried despite his request to be allowed to go at his own pace. Appellant's Detective Squillace testified that Devercelli was just escorted to the detention room.

5. It came out at trial that this request was denied or ignored even though one of the rights, explained to Devercelli by the store

detective who read them from a preprinted card, was to be allowed to make a phone call.

6. The original complaint was filed in the United States District Court for the District of Columbia upon grounds of diversity of citizenship being a cause of action exceeding $10,000. After pretrial hearings the case was certified to the District of Columbia Court of General Sessions (now Superior Court) under D.C.Code 1967, § 11–962, the District Court stating that it felt the action would not "justify" a judgment in excess of $10,000.

7. Shaw v. May Department Stores Co., D.C. App., 268 A.2d 607 (1970); Hardy v. Hardy, D.C.App., 197 A.2d 923 (1964).

in effect at the time differed from the usual shoplifting laws. They provided:

Va.Code 1950, § 18.1–126

*Concealment of merchandise on premises of store a misdemeanor.* Whoever, without authority, wilfully conceals the goods or merchandise of any store, while still upon the premises of such store, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished as provided by law.

Va.Code 1950, § 18.1–127

*Exemption from civil liability in connection with arrest of suspected person.* A merchant, agent or employee of the merchant, who causes the arrest of any person pursuant to the provisions of § 18.1–126, shall not be held civilly liable for unlawful detention, slander, malicious prosecution, false imprisonment, false arrest, or assault and battery of the person so arrested, whether such arrest takes place on the premises of the merchant, or after close pursuit from such premises by such merchant, his agent or employee, provided that, in causing the arrest of such person, the merchant, agent or employee of the merchant, had at the time of such arrest probable cause to believe that the person committed wilful concealment of goods or merchandise.

Under the Virginia Code, if the merchant or his agent has probable cause to believe that one is willfully concealing goods or merchandise, and thereupon detains him, for interrogation and possible search, then a reasonable detention and/or interrogation of such person will not serve as the basis for a civil action.[8]

■ ■ Probable cause is a mixed question of law and fact and where the facts that might establish probable cause are in dispute, their existence is for the determination of the jury.[9] Based upon this record, and considering the evidence in the light most favorable to appellee, we cannot hold that the trial court should have ruled as a matter of law that there was probable cause to apprehend Devercelli. The testimony at trial was conflicting as to appellee's movements within the store both before and after the merchandise was placed in the bag and particularly whether all of the items were put in the bag while he was stooped down picking them up after having dropped them on the floor or whether, as he testified, and contrary to the dissent, some items were

8. Delp v. Zapp's Drug & Variety Stores, 238 Or. 538, 395 P.2d 137 (1964); J. C. Penney Co. v. Cox, 246 Miss. 1, 148 So.2d 679 (1963) (action for false imprisonment based on a statute similar to the Virginia statute at bar); Rothstein v. Jackson's of Coral Gables, Inc., 133 So.2d 331 (Fla.App. 1961) (action for false imprisonment based on a statute similar to the Virginia statute at bar).

It should be noted that we are approaching the statute in issue as a matter of first impression in that no court in Virginia to our knowledge has ever commented on its meaning or legal effect.

However, a willful concealment would seem to involve necessarily a wrongful purpose such as to defraud or to convert to one's own use. The Supreme Court of Appeals of Virginia held that their receiving stolen goods statute, section 18.1–107, which provides in pertinent part, "[i]f any person . . . aid[s] in concealing, any stolen goods" requires the prosecution to prove, among other elements, "that he so aided in concealing them with a dishonest intent." Parish v. Commonwealth, 206 Va. 627, 145 S.E.2d 192, 196 (1965), cert. denied, 384 U.S. 942 (1966). *See also* United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933); Slaughter v. District of Columbia, D.C.Mun.App., 134 A.2d 338 (1957).

9. Brooking v. Lemon, D.C.Mun.App., 96 A.2d 849 (1953). The definition of probable cause in Virginia has been briefly stated thusly as cited with approval from Virginia R. & P. Co. v. Klaff, 123 Va. 260, 96 S.E. 244, 246 (1918): "Probable cause is knowledge of such state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." Spitzer v. Clatterbuck, 202 Va. 1001, 121 S.E.2d 466 (1961); Giant of Virginia, Inc. v. Pigg, 207 Va. 679, 152 S.E. 2d 271 (1967).

placed in the bag as he was standing by the cuff link counter comparing and selecting other cuff links. (Tr. at 24, 66 and 67.) There also was conflict as to whether or not he had left the men's department and was about to enter an escalator when he was apprehended, or whether, as he testified, he had remained in the immediate area where he selected his merchandise. Presented with differing accounts of the activities of the appellee, we think it clear the trial court was confronted with a situation where reasonable minds might differ.[10] In view of the conflicts in the evidence as to whether probable cause existed, it was manifestly for the jury to weigh the evidence and determine the credibility of the witnesses.[11] Thus we hold the court was correct in submitting the question of probable cause to the jury which resolved this issue in favor of the plaintiff.

Appellant's brief cites us to numerous cases to support its contention that probable cause to arrest existed as a matter of law; however, the admitted facts in each of those cases reflected additional circumstances of a compelling nature to support a reasonable ground to believe the suspect was violating the law.[12] We would note that in this case appellee had not attempted to leave the store without paying for the merchandise. Indeed he testified he had not even left the men's department and the record is conflicting as to whether he had moved from the area of one cash register to another. He testified he had not. Whether or not his putting the merchandise into a shopping bag provided probable cause to believe he intended thereby to willfully conceal it was for the jury.

■ We recognize that merchants must be permitted to take reasonable steps to protect themselves from the heavy losses arising from the activities of shoplifters, and in this case it is not surprising that the suspicions of appellant's detectives were aroused by appellee's appearance. It is generally recognized that alcoholics and drug addicts frequenty steal and pilfer as a means of supporting their habit. However, the precautions taken must not offend the basic principles of our criminal justice system. In the instant case, had the detectives displayed more restraint and attempted to acquire more information from the actions of Devercelli before deciding to act, they might well have concluded he had no criminal purposes whatever.[13] In the event he had such intentions their suspicions might have been confirmed by further surveillance. In any event, since the jury found appellant did not have probable cause to apprehend Devercelli, it necessarily follows that the subsequent detention of him was without authority.

Appellant also contends that several portions of the instructions to the jury were improper. We have carefully reviewed the instructions given and on this record

10. We are constrained to observe that the dissent does not consider the facts in the light most favorable to appellee overlooking as it does some of those set forth immediately above.

11. The Supreme Court of Appeals of Virginia recently said: "Unless the evidence leaves no room for reasonable men to disagree, that [probable cause] will be a question of fact properly within the province of the jury." F. B. C. Stores, Inc. v. Duncan, 198 S.E.2d 595 (No. 8175, decided August 30, 1973).

12. For example, in Delp v. Zapp's Drug & Variety Stores, supra note 8, wherein the customer was apprehended after leaving the

cash register on her way out of the store with unpaid for merchandise in her jacket pocket; Cooke v. J. J. Newberry & Co., 96 N.J.Super. 9, 232 A.2d 425 (1967), wherein the customer was apprehended after leaving the cashier with unpaid for merchandise inside a shopping bag; Bettolo v. Safeway Stores, Inc., 11 Cal.App.2d 430, 54 P.2d 24 (1936), wherein the customer was seen placing merchandise in his overcoat pocket and proceeding through the check-out stand without paying for it and was apprehended outside the store.

13. Placing items in a shopping bag, without more, does not permit an inference of criminal intent. Durphy v. United States, D.C. App., 235 A.2d 326 (1967).

can find no prejudicial error.[14] The point raised in the dissent as to the instruction on probable cause was not made by appellant to the trial court, nor was it raised by appellant on appeal.[15]

The charge on counts one and two taken as a whole appears to us to be an adequate statement of the law applicable to the evidence and supports the conclusion that the case was fairly presented to the jury.

■ Appellant also contends that civil release signed by appellee is a bar to this action, and that the trial court should have so ruled as a matter of law. We cannot agree. The trial court properly submitted to the jury the question of whether the release was obtained by duress. The jury found that it was and its finding was amply supported by the evidence, *supra*.

Appellant contends that the count on statutory slander was barred by the statute of limitations in that the amendment to the complaint containing this count was not filed until Januay 22, 1971, whereas the cause of action had accrued on July 15, 1968.

■ This issue being procedural is governed by the statute of limitations of the forum. Kaplan v. Manhattan Life Ins. Co., 71 App.D.C. 250, 109 F.2d 463 (1939). In the District of Columbia an action for slander may be brought within one year as was the complaint here, D.C.Code 1967, § 12–301(4).

■ The complaint filed on July 14, 1969, contained a count for common-law slander charging that the defendant's employees accused him "of being either a drunkard or a drug addict or both." Plaintiff subsequently moved to amend the pretrial order so as to include the statement that plaintiff additionally relies upon section

δ–630 of the Code of Virginia which provides a statutory remedy for slander. The trial court granted him permission to amend.

Even viewing this as constituting, in effect, an amendment of the complaint, we do not consider it the commencement of a new cause of action. The time of the occurrence, the persons present, and the words claimed to be actionable, were not changed but remained substantially as alleged in the complaint. This is clearly permissible and within the meaning of Superior Court Civil Rule 15(c). To a similar effect is Youngblood v. City of Los Angeles, 160 Cal.App. 2d 481, 325 P.2d 587, 593 (Cal.Dist.Ct.App. 1958).

■ Appellant also contends that its motion for a directed verdict on this count should have been granted as a matter of law. In support of the motion it argues that the words were spoken under circumstances providing a qualified privilege and that no effort was made to prove actual malice in this regard which would then become an essential element to such a cause of action. We agree. As to what constitutes a privileged occasion, the Virginia Supreme Court of Appeals has quoted with approval from Newell on Slander and Libel 2d ed. at 388 as follows:

A privileged communication is one made in good faith upon any subject matter in which the party communicating has an interest or in reference to which he has, or honestly believes he has, a duty, to a person having a corresponding interest or duty, and which contains matter which without the occasion upon which it is made, would be defamatory and actionable.

Peoples Life Ins. Co. of Washington, D. C. v. Talley, 166 Va. 464, 186 S.E. 42, 44 (1936). *See also* Marsh v. Commercial and Savings

14. Caldwell v. United States, 95 U.S.App.D.C. 35, 37, 218 F.2d 370, 372 (1954); Tatum v. United States, 88 U.S.App.D.C. 386, 190 F.2d 612 (1951); Pistorio v. Washington Ry. & Electric Co., 46 App.D.C. 479 (1917);

Fleet v. May Department Stores, Inc., 500 P.2d 1054, 1058 (Or.1972).

15. *Id.*

Bank of Winchester, 265 F.Supp. 614, 621 (W.D.Va.1967) and Flowers v. Zayre Corp., 286 F.Supp. 119 (S.C.1968), which, as here, involved a store's security officer. Also Ridgeway v. Safeway Stores, Inc., 139 F. Supp. 290 (E.D.Va.1948), which involved remarks by a store employee to a suspected shoplifter. We hold that the insulting words here, as in the foregoing authorities, were uttered under circumstances providing appellant a qualified privilege.

The so-called slanderous words here were used by employees of appellant in the course of what appeared to be a bona fide questioning of appellee's decedent, whom they believed to have wrongfully concealed certain merchandise. The questions were not so framed as to be unusually accusatory, but simply inquired as to appellee's use of alcohol and drugs. Devercelli testified he was not accused of being an "addict" or a "drunkard". He said "he just asked me if I was on some drugs", and "he asked me more than three times if I had been drinking, and then when three times I told him, 'No', he told me, 'Not even two beers?'"

The Virginia Court held in both *Marsh, supra* 265 F.Supp. at 612 and *Talley, supra* 186 S.E. at 44, that although the question of whether the store employees acted with malice ordinarily is one of fact for the jury that when the communication is privileged there can be no recovery unless there is evidence from which a jury may fairly conclude there was malice in the utterance of the words.

However, appellee failed to offer extrinsic evidence to prove actual malice as to the so-called insulting words.[16] We fail to find any evidence in the record of malice being involved in this part of the questioning. In this respect it has been said that on an occasion of qualified privilege " . . . if the language of the communi-

cation, and the circumstances attending its publication by the defendant are as consistent with the nonexistence of malice as with its existence, there is no issue for the jury, and it is the duty of the trial court to direct a verdict for the defendant." National Disabled Soldiers' League v. Haan, 55 App.D.C. 243, 248–249, 4 F.2d 436, 441–442 (1925), *quoted with approval in Marsh, supra*. To the same effect, *see* Kroger Grocery & Baking Co. v. Yount, 66 F.2d 700 (8th Cir. 1933).

We agree and hold that the trial court should have directed a verdict for the defendant on count three for statutory slander.

■ This brings us to appellant's question as to the propriety of instructing the jury on punitive or exemplary damages. Although we have found no evidence of malice in the use of insulting words, there was evidence regarding his apprehension and detention warranting the submission of this question to the jury on counts one and two. Devercelli was apprehended with considerable force according to his testimony and detained against his will for one and one-half hours (*see* note 4, *supra*) by store detectives, one of whom wore a holstered gun. His testimony that he was refused permission to make a telephone call (note 5, *supra*), that he was told repeatedly by the store detectives he could not leave until he signed a release and that if he refused to sign he would go to jail, provides ample basis for a jury issue on the question of malice. The jury resolved that issue against appellant. Appellee points out that the instruction on punitive damages as given was identical to the instruction set forth in 1 Virginia Practice—Jury Instructions § 46.14, subject to the modifications requested by the defendant. We do not find that the instruction was an inadequate statement of the law.

16. In this connection the following colloquy occurred during cross-examination:
Q Mr. Devercelli, did you ever know any of these five men you have described, *before this incident*?
A No, Mr. Thompson.

Q Do you know of any *motive* that they had of personal animosity towards you?
. . .
THE WITNESS: I don't think they had any animosity against me. [Tr. at 92 (emphasis supplied).]

■ We come now to the question raised by appellant regarding the size of the verdict returned by the jury. Appellant contends that the verdict ($165,000) shows on its face that it was the product of prejudice, passion, or mistake and that consequently the trial court should have granted a new trial. The granting or denial of a new trial based on the excessiveness of the verdict is within the sound discretion of the trial court, and will not be reversed by an appellate court without a showing of an abuse of that discretion.[17]

In its opinion of June 15, 1971, denying appellant's motion for a new trial, the trial court stated:

> The Court considered its power of *remittitur* whereby the Court can order a new trial unless the Defendant accepts a lesser amount of damages than awarded by the Jury's verdicts. In this connection the Court made several inquiries to obtain comparative verdicts elsewhere in the nation. The verdicts awarded by this jury were higher than the average in cases of erroneous apprehension for shoplifting but they were not the highest found by a brief, informal survey. Thus, the Court does not consider the Jury's verdicts excessive when measured against other such verdicts nationally. [Tr. at 82.]

■ We are constrained to point out that whether there were verdicts in other cases that equaled or exceeded the verdict under consideration, cannot be the sole or controlling factor in a trial court's determination of excessiveness of a verdict. The question is whether the amount of the verdict in this case, regardless of its comparative size, was the result of passion, prejudice or mistake. Each case in this area necessarily rises or falls on its own facts and the trial court in ruling on the ques-

tion of whether or not a jury verdict is excessive must determine on the totality of facts before it whether it was the result of passion, prejudice or mistake. On the record before us, we are unable to ascertain that in resolving that issue the trial court considered any circumstances in this case that might have had such an undue effect on the jury.

Appellant filed a post-trial motion asking the court to declare a new trial alleging that the size of the verdict was the result of passion and prejudice. The court apparently overlooked this allegation and did not resolve that issue. We must therefore remand the case on the issue of damages with instructions to consider appellant's allegations regarding the effect, if any, of passion or prejudice on the size of the verdict.

The judgment as to liability on counts one and two is affirmed and as to count three is reversed. The case is remanded to the trial court for reconsideration of the question of the size of the verdict on the first two counts raised in the motion for a new trial.[18]

So ordered.

NEBEKER, Associate Judge (dissenting):

Despite our protracted deliberations and efforts for agreement which have now produced the majority opinion, I am constrained promptly to express my dissent. Clearly, as in a criminal case, the issue of probable cause is a question of law for the court to determine when there are no material issues of fact. There are, in my view and with all deference to the majority, no material issues of fact on the question of probable cause reflected in this record. The effort by the majority to demonstrate factual

---

17. Evening Star Newspaper Co. v. Gray, D.C. Mun.App., 179 A.2d 377 (1962); All Weather Storm Windows v. Zahn, D.C.Mun.App., 112 A.2d 496 (1955); Munsey v. Safeway Stores, D.C.Mun.App., 65 A.2d 598 (1949).

18. Appellant urges numerous other points on appeal directed to the conduct of the trial by the trial judge. We have reviewed each of these and based on the record and applicable law find them to be without merit.

**776**

conflicts and then elevate them to the level of materiality results, I suggest, from a failure of objective legal analysis. I concede this is a sympathetic case when one views all the facts in retrospect. The unfortunate condition of Mr. Devercelli, unknown to the arresting officer, has nothing to do with the legality of his arrest and I am confident it had considerable, improper influence with the jury on the issue of probable cause and its award of excessive damages. I trust this decision will not confuse the well-established law in both this jurisdiction[1] and in Virginia[2] on the role of the court in questions of this kind. It is clear to me that this decision reflects an a priori approach to the facts of record to which this holding most certainly should be confined.

A determination of probable cause cannot be colored by facts not known or reasonably apparent to the officer making the apprehension. The court must view the situation through the eyes of the officer. Prieto v. May Department Stores Co., D.C.App., 216 A.2d 577 (1966). In doing so, these are the facts. Mr. Devercelli gave all the appearance of a most desperate shoplifter. The majority concedes this. His explanation to the female security officer of the reason for his appearance does not dispel the high degree of suspicion already apparent, for such "explanations" are easily fabricated.[3] But in any event, this attempt to divert the suspicion, which even Mr. Devercelli recognized by explaining his condition to the female security officer, cannot, on this record, be imputed to the arresting officer. In selecting ties and then shirts, Mr. Devercelli next proceeded in a manner quite consistent with an effort by a thief to conceal the items. He dropped or caused to fall to the floor other small items (cuff links, located a short distance away from the stack of shirts). In recovering these items, and while in a stooped or crouched position, he placed other items in the bag. It is important to note that he could have overtly placed the items in the bag as he selected them. Instead, knowing he was behaving suspiciously, he undertook what reasonably appeared to be a familiar effort to conceal his actions. He "dropped" items to the floor and then, while seemingly retrieving them, dropped other items, and, in the ensuing confusion, placed small and large items in the bag. Little wonder the arresting officer acted at that point. It must be remembered we are here dealing with an offense called willful concealment, not larceny. It is thus irrelevant whether Devercelli attempted to leave the store or the specific area without paying for the items concealed in the bag. Neither is it relevant that the bag was given Devercelli by a store employee, nor what he considered the purpose for the bag. Shopping bags are usually available within department stores for use by customers, and unfortunately they are also available to a thief.

I respectfully submit that the conflict in testimony regarding Mr. Devercelli's movements in the store is immaterial. The majority's concession that it "is not surprising that the suspicions of appellant's detectives were aroused" and that they could have "displayed more restraint and attempted to acquire more information" is astounding in view of their holding. I assume the majority is importing into this area of law a concept of a limited "seizure" of the person as in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). They would seemingly permit the suspect to be stopped and questioned in full view

1. Stewart v. Sonneborn, 98 U.S. 187, 25 L.Ed. 116 (1879); Smith v. Tucker, D.C. App., 304 A.2d 303 (1973); Prieto v. May Department Stores Co., D.C.App., 216 A.2d 577 (1966); Sears Roebuck & Co. v. Gault, D.C.Mun.App., 175 A.2d 795 (1961); Brooking v. Lemon, D.C.Mun.App., 96 A.2d 849 (1953); Chapman v. Anderson, 55 App.D.C. 165, 3 F.2d 336 (1925).

2. Brodie v. Huck, 187 Va. 485, 47 S.E.2d 310 (1948); Munger v. Cox, 146 Va. 574, 131 S.E. 841 (1926); Virginia Ry. & Power Co. v. Klaff, 123 Va. 260, 96 S.E. 244 (1918).

3. See Smith v. Tucker, supra note 1; Shaw v. May Department Stores Co., D.C.App., 268 A.2d 607 (1970).

and hearing of other customers. I can think of no faster way to produce embarrassment and a damage suit for slander and false arrest.

As to the majority's view that the cases cited by appellant contained additional circumstances to support probable cause, I believe a careful reading of those cases will show they support appellant's assertion that probable cause did exist. Delp v. Zapp's Drug and Variety Stores, 238 Or. 538, 395 P.2d 137 (Or.1964), pertained to a statute which required, unlike the Virginia statute here in question, the additional element of taking "with intent to convert to his own use without paying the price." Clearly then, in order to establish probable cause it was necessary under the Oregon statute to wait until the suspect had proceeded past the check-out counter. This additional element, however, would not be required under the Virginia statute to establish probable cause and is not constitutionally required, for probable cause always requires less than proof beyond a reasonable doubt. Cooke v. J. J. Newberry & Co., 96 N.J.Super. 9, 232 A.2d 425 (1967), pertains to a New Jersey statute that indeed contained a presumption that concealment of the merchandise in the store was prima facie evidence of intent to convert to the use of the taker without paying the purchase price. A careful reading of *Cooke* will show that the court did not question the probable cause for the arrest, nor did it purport to establish a minimum level for probable cause as the majority implies. The New Jersey statute clearly states that mere concealment of the merchandise would create probable cause. Finally, Bettolo v. Safeway Stores, Inc., 11 Cal.App.2d 430, 54 P.2d 24 (1936), expressly supports this view by holding:

> The undisputed evidence shows reasonable and probable cause for the detention. Johnson had seen the respondent pick up the candy and conceal it in his pocket. . . . [*Id.* at 431, 54 P.2d at 25.]

In spite of the majority's statement to the contrary, the court did not hold that the additional circumstance of proceeding through the check-out counter without paying was necessary to constitute probable cause.

My disagreement with the majority opinion does not end with the matters just discussed for even on the assumption that there were material issues of fact respecting probable cause to be resolved by the jury, it is clear that such issues were not presented to the jury under proper instructions. The law is clear, at least since Chapman v. Anderson, 55 App.D.C. 165, 3 F.2d 336 (1925), where it was said:

> [If] there is disputed testimony, which should be heard by the jury in determining . . . whether the prosecutor had probable cause, it certainly should be submitted to them *under instructions by the court which state such facts, embraced within the record, as would constitute probable cause*. . . . [A]nd it devolves upon the court to instruct the jury as to whether certain facts, if, proven, amount to probable cause. . . . [*Id.* at 169, 3 F.2d at 340; emphasis supplied.]

We have just recently reaffirmed this rule in Clarke v. District of Columbia, D.C.App., 311 A.2d 508 (decided Nov. 21, 1973), and there recognized that the court ultimately determines probable cause as a legal matter. *Id.*, at 511, quoting from Director General of Railroads v. Kastenbaum, 263 U.S. 25, 44 S.Ct. 52, 68 L.Ed. 146 (1923). In the instant case the trial judge, after defining probable cause in terms of reasonable grounds, proceeded in substance to tell the jury that the surrounding circumstances must be such that a reasonable and prudent person would conclude there was probable cause for charging the plaintiff with the crime of willfully concealing the merchandise. This instruction is clearly inadequate and reversible error.[4] Moreover, there was no attempt to define or limit what sur-

---

4. It was hardly incumbent on appellant, as my colleagues view it, to object to or attempt to correct this portion of the charge since it took specific exception to giving the question to the jury in the first instance.

rounding circumstances were relevant to probable cause. The jury was, thus, left free on this question to consider irrelevant and inflammatory factors such as Devercelli's unknown malady and his innocent state of mind. The majority fails to perceive that the jury, in addition to determining credibility, also *concluded* there was no probable cause. The jury should never have been permitted to arrive at this conclusion outside of its fact-finding function. Rather, assuming existence of a jury issue, it should have been instructed that if certain facts are found by it to be true then perforce the question of probable cause is resolved in favor of Mr. Devercelli. Accordingly, the question of jury determination of probable cause in this case is so permeated with error that there is no way to preserve the verdict as it relates to that question.

Since the facts apparent to the arresting officer were, in my view, sufficient to justify the apprehension, I would reverse with directions to enter judgment for appellant on count one (false arrest) as well as count three (insulting words). I would, however, award a new trial on so much of the false arrest count as fairly asserted continued, unwarranted detention of Mr. Devercelli after his innocence became reasonably apparent and on so much of count two (assault and battery) as fairly asserted an assault subsequent to the arrest and search —that is, the alleged actions of appellant's agents in attempting to obtain a release by show of armed force. Those aspects of the case, if proved, are beyond the privilege granted by the Virginia statute (Va.Code 1950, § 18.1–127).

My colleagues remand the case for consideration of appellant's "allegations regarding the effect, if any, of passion or prejudice on the size of the verdict." As to punitive damages, they find sufficient evidence of malice only from "[h]is testimony . . . that he [Devercelli] was told repeatedly by the store detectives he could not leave until he signed a release and that if he refused to sign he would go to jail

. . . ." Majority opinion at 774. On the other hand, they acknowledge that the detectives' suspicions were reasonably aroused by Devercelli's actions and appearance. It, therefore, is inescapable to me that the $50,000 punitive damages award under the false imprisonment count must be vacated by this court as unsupported by evidence of malice (*see* F.B.C. Stores, Inc. v. Duncan, 198 S.E.2d 595 (Va.1973) (No. 8175, decided Aug. 30, 1973). At the very least the trial judge should, on remand, recognize the cause of the excessive award in ruling on the motion for new trial.

Before REILLY, Chief Judge, and KELLY, FICKLING, KERN, GALLAGHER, NEBEKER, PAIR, YEAGLEY and HARRIS, Judges.

## ON PETITION FOR RE-HEARING EN BANC

### ORDER

Separate Statement by NEBEKER, Associate Judge, as to why he voted to rehear this case:

By a six to three vote, rehearing *en banc* has been denied. Thus, a majority is of the view that the division opinion is not a departure from decisional holdings of this court. *See* Rule 40(c) of the Rules of this court. At least on the question respecting the role of the jury on probable cause, we do not change the basic rule, and this case is confined to its particular evidentiary and procedural facts. It does not hold that the jury instructions on probable cause are a model and correct way of guiding resolution of that issue. Nor has the division opinion been viewed as inconsistent with established law respecting when probable cause should be decided by a jury. This part of our ruling is apparently confined to the Virginia statute of willful concealment.

The petition for rehearing makes a telling point with reference to an internal inconsistency in our holding respecting the motion for a new trial as it was based on

an allegation of passion and prejudice evidenced by the amount of the verdict. The majority observed that this point had been overlooked by the trial judge. The majority opinion states that the new trial motion alleged "that the size of the verdict was the result of passion and prejudice." (at 775.) That is not so. The trial judge said in the first sentence of the very paragraph quoted, but only in part, on page 775, " . . . The Defendant asserts that the damages awarded by the jury were so excessive *as to indicate that the verdicts were the result of passion, prejudice or mistake.*" (Emphasis supplied.) This sentence was overlooked by the majority when they remanded the case "on the issue of damages with instructions to consider appellant's allegations regarding the effect, if any, of passion or prejudice *on the size of the verdict.*" (Emphasis supplied.)

At no time until the majority opinion has anyone treating this case assumed that the fair trial defect of passion and prejudice went only to the amount of damages and conclusively did not infect the verdict on liability. The majority offers no explanation as there can be none aside from the error in viewing the new trial motion as addressing, on this point, damages only and not liability.

I would grant rehearing, reverse, and order a limited new trial, or at the very least, *sua sponte,* modify the majority opinion so as to permit consideration of passion and prejudice on the new trial motion as it related to liability. *See* Geffen v. Winer, 100 U.S.App.D.C. 286, 244 F.2d 375 (1957).