## 52017. GREER et al. v. STATE FARM FIRE & CASUALTY COMPANY.

QUILLIAN, Judge.

Mr. and Mrs. Greer, tenants in Atlanta's Baptist Towers, were injured in a fire which consumed the 7th through 10th floors of the Towers on November 30, 1972. Along with other tenants injured in that fire, the Greers brought suit against the builder, Thomas A. Butler, Sr., who was covered by a State Farm Fire & Casualty Company "homeowner's policy." Mr. Butler called upon State Farm to defend him. State Farm contended that as Mr. Butler had not immediately forwarded to them "notice . . . concerning the occurrence" and "every demand, notice of claim, summons or other process" received by him, it was questionable as to whether his "policy conditions were violated." However, they employed the firm of "Greer, Pollack and Klosik" to represent Mr. Butler without waiving "any of the terms or conditions of the policy."

The record does not reveal when the Greers filed their first action against Mr. Butler, but at a later date, State Farm hired the law firm of Henning, Chambers and Mabry to represent them in this action for a declaratory judgment as to their liability to Mr. Butler under the policy, and prayed that the Greers and other plaintiffs be "restrained and enjoined from proceeding with and prosecuting [their] damage suits until a final determination of this action has been reached." All plaintiffs in the earlier actions against Mr. Butler, as well as the Greers and Mr. Butler, were named as defendants in this action for a declaratory judgment. This latter action was filed on June 16, 1975.

On June 22, 1975, the Greers wrote to a judge of DeKalb Superior Court "in answer to papers served on [them]" in this action, advising the court that their suit arising from the Baptist Towers fire had been settled. However, three days later, on June 25, 1975, the Greers formally answered the present action and filed a counterclaim, alleging that the present suit by State Farm is "malicious, vicious, and designed to be extortionate and harrassing and outrageous so as to

inflict . . . mental anguish, worry, suffering, and fear upon defendants. . ." because State Farm "knew when it filed its suit that the *litigation* it sought to enjoin had been ended and [State Farm] had no conceivably valid legal cause of action." (Emphasis supplied.)

On July 11, 1975, State Farm filed a "voluntary dismissal" of its action against the Greers and moved to dismiss the Greers' counterclaim. In support of its motion to dismiss, State Farm filed affidavits of its attorneys who represented them in both civil actions and of a Mr. R. A. Reynolds, resident claims superintendent of State Farm, who "handled under [his] direct supervision and control" the defense of the original claims against Mr. Butler. The attorney who defended Mr. Butler in the original action and one of the lawyers who represented State Farm in this action, and the State Farm claims superintendent all stated that they had no knowledge, either actual or constructive, that the Greers had "settled or agreed to settle any claims which they might have asserted in" the original suit prior to this action being filed for a declaratory judgment. The remaining lawyer in the present case made the same statement but added that some time after June 16, 1975, the date this action was filed, it came to his attention that the prior case may have been settled, and through his investigation he discovered that the case "had been dismissed and the court costs paid on June 30, 1975," and therefore he filed "a dismissal of the declaratory judgment action . . . on July 11, 1975."

A hearing was set on plaintiff's motion to dismiss the Greers' counterclaim for August 19, 1975. On the day preceding the hearing the Greers filed an amendment to their counterclaim and "incorporate[d]. . . by reference their entire counterclaims and pleadings heretofore filed by them." On the following day, August 19, 1975, the trial court converted the motion to dismiss to one for summary judgment as evidence supporting the motion had been introduced. Plaintiff's motion for summary judgment was sustained. Defendants appeal. *Held:*

1. When a plaintiff employs a civil proceeding in order to execute the object which the law intends to subserve, but proceeds maliciously and without probable

cause, an action for malicious use of process lies. *Dixie Broadcasting Corp. v. Rivers,* 209 Ga. 98 (5) (70 SE2d 734). Before one can recover in an action for malicious use of civil process, three essential elements must appear: (1) malice, (2) want of probable cause, and (3) termination of proceedings in favor of the defendant. *Ga. Veneer &c. Co. v. Fla. Nat. Bank,* 198 Ga. 591 (2) (32 SE2d 465). In the instant case the suit upon which the counterclaim was based had not terminated but was pending when the counterclaim was filed. This court held in *Metro Chrysler-Plymouth, Inc. v. Pearce,* 121 Ga. App. 835, 841 (175 SE2d 910): "Under many decisions of the Supreme Court and of this court this counterclaim is premature, because there has been no termination of the main action in defendant's favor, and at the time of serving his pleading defendant had no claim, or was in no position to assert one, against the plaintiff for malicious use of process." The court went further to explain that "[t]he rule that 'there can be no recovery unless the plaintiff has a complete cause of action at the time the suit is filed,' and that ' a cause of action accruing pending the suit will not entitle the plaintiff to recover' *(Deas v. Sammons,* 126 Ga. 431, 432 (55 SE 170, 7 AC 1124)), applies equally to a counterclaim." Id.

In *Metro Chrysler-Plymouth, Inc.,* supra, this court discussed the effect of Code Ann. § 81A-113 (a) — compulsory counterclaims which had not matured at the time of the filing of the action, but did not reach Code Ann. § 81A-113 (e), "a claim which either matured or was acquired by the pleader after serving his pleading." This latter issue was discussed in *Monumental Properties, Inc. v. Johnson,* 136 Ga. App. 39 (220 SE2d 55), in tandem with Code Ann. § 81A-115 (d) (Ga. L. 1966, pp. 609, 627; 1968, pp. 1104, 1106; 1972, pp. 689, 694) which provides: "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit [a party] to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense."

In the instant case, even if the answer and

counterclaim were premature at the date of original filing, the subsequent amendment of the original counterclaim, after plaintiffs had voluntarily dismissed their complaint, was timely filed and no objection was made by plaintiff. On the contrary — plaintiff's counsel stated in judicio: "We have no objection to them proceeding in court by way of a counterclaim to determine the issues raised in the counterclaim. . ." Accordingly, it would have been incorrect to dismiss the amended counterclaim, filed after the termination of the original action, as it was not premature under Code Ann. §§ 81A-113 (e) and 81A-115 (d), as a permissible counterclaim. *Monumental Properties, Inc. v. Johnson,* 136 Ga. App. 39, 40, supra; 3 Moore's Federal Practice § 15.16 (2) (3); compare *Baitcher v. Louis R. Clerico Associates, Inc.,* 132 Ga. App. 219 (1) (207 SE2d 698).

2. The sole enumeration of error was that the final order of the trial court was in error, and as the order did not state the basis for its issuance, Division 1 above is not dispositive of this case when there were four possible bases for the order's issuance: (1) the counterclaim was premature, (2) there was no malice on the part of plaintiff, (3) plaintiff had probable cause for bringing its action, or (4) there was no "special" injury to the defendant.

We have determined (1) in favor of appellant in Division 1. We will discuss (2) and (3) together in the first subdivision hereinafter, and (4) in the final subdivision.

(a) Malicious use of civil process requires the presence of malice and the absence of probable cause. Although State Farm may have been negligent in not keeping its various departments currently informed of the acts of each other as to different actions concerning the claimants, we find no malice. Of primary importance is the fact that this action was filed on June 16, 1975, while the former legal action was still pending. See *Hearn v. Batchelor,* 47 Ga. App. 213 (2) (170 SE 203); *Hicks v. Brantley,* 102 Ga. 264, 269 (2) (29 SE 459). The test to be applied is whether the plaintiff, in seeking to establish his alleged rights, acted in good faith or whether he proceeded maliciously and without probable cause. *Fletcher v. Ga. Power Co.,* 117 Ga. App. 696, 697 (1) (161 SE2d 369). Although we will construe the facts most favorably for the

party opposing the motion for summary judgment, the Greers, the fact stated in their brief opposing the motion to dismiss their counterclaim that "on May 14, 1975, drafts were issued in full settlement of the suit which State Farm, a month and two days later seeks to have clarified," is not conclusive upon the issue used as a basis for the counterclaim. The Greers' counterclaim was predicated on the allegation that "[p]laintiff knew when it filed its suit that the *litigation* it sought to enjoin had been ended." (Emphasis supplied.) The administrative settlement of the claimant's claims against Mr. Butler did not automatically terminate the litigation between State Farm against Mr. Butler and the other claimants for a declaratory judgment as to State Farm's liability in view of the alleged failure of Mr. Butler to comply with the policy provisions and the subsequent "reservation of rights" letter to Mr. Butler by State Farm in return for providing legal representation for Mr. Butler although it may have mooted the issue. That litigation was terminated on June 30, 1975 — fourteen days after this action was filed.

Under these facts we find no malice or lack of probable cause as there was an ongoing process of separate administrative and legal actions by one large insurance company, with an understandable lag of time in one office notifying another office or legal representative of its activities.

(b) A second reason for lack of prejudice in dismissal of the counterclaim lies in the fact that a litigant may not recover for malicious use of civil process where his person or property has not been seized unless the litigant sustains some special damage or injury other than that which necessarily results in all suits prosecuted to recover in like causes of action. *Crawford v. Theo,* 112 Ga. App. 83, 85 (2) (143 SE2d 750); *Metro Chrysler-Plymouth, Inc. v. Pearce,* 121 Ga. App. 835, supra. Special injury does not include humiliation, or even being held up to public scorn and ridicule. *Jacksonville Paper Co. v. Owen,* 193 Ga. 23, 25 (17 SE2d 76); *Dixie Broadcasting Corp. v. Rivers,* 209 Ga. 98, 108, supra. We find the counterclaim averment, based on "mental anguish, worry, suffering and fear," to fall within the same general category.

The attempt to invoke the provisions of Code § 105-2003 permitting recovery of "vindictive damages" for injury to "peace, happiness, or feelings" is not applicable to this particular action. The editorial note to Code § 105-2003 explains that this section was "intended to apply to cases where one party injured another from motives of malice." In Division 2 of this opinion we found a lack of malice. In *Blanchard v. Westview Cemetery, Inc.,* 133 Ga. App. 262, 269 (211 SE2d 135), this court held that Code § 105-2003 applies only "where the entire injury is to the peace, feelings or happiness. 'Entire injury' means there is no injury to the 'person or purse'. . . Moreover, in such cases, a recovery is allowed only where there is a wilful and intentional tort." The Supreme Court, in affirming *Westview Cemetery, Inc. v. Blanchard,* 234 Ga. 540, 544 (216 SE2d 776), agreed and extended its interpretation of Code § 105-2003 to hold "[i]f 'mental pain and suffering' is not accompanied by physical injury or pecuniary loss, recovery is allowed only if the conduct complained of was 'malicious, wilful, or wanton.' "

Here the filing of this action for a declaratory judgment, while the former action was still pending, even though agreement may have been reached as to a settlement figure and a draft issued, would not come within the described category of "malicious, wilful, or wanton acts." There was no physical injury, and in cases based on malicious use of civil process it has been the constant rule that "special injury" must be something "over and beyond damages for humiliation and ridicule, or attorney fees and other expenses of defending the litigation." *Farmers Bank, Union Point v. Maxey,* 127 Ga. App. 278, 279 (193 SE2d 206); *Dixie Broadcasting Corp. v. Rivers,* 209 Ga. 98, 108, supra. We find no special injury. This enumeration is without merit.

*Judgment affirmed. Deen, P. J., and Webb, J., concur.*

ARGUED APRIL 12, 1976 — DECIDED JUNE 16, 1976.

*Hugh G. Head, Jr., Kathleen Kessler, Douglas T. Noonan, Richard L. Fullerton,* for appellants.

*Henning, Chambers & Mabry, Edward J. Henning, Walter B. McClelland,* for appellee.