626 F.2d 173

Isidore SHULMAN, M.D., Appellant,

v.

Dona L. MISKELL, Philip F. Hudock, Esquire.

No. 79–1293.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 11, 1979.

Decided May 7, 1980.

Michael S. Frisch, Washington, D. C., with whom Samuel Barker, Bethesda, Md., was on brief, for appellant.

Russell H. Carpenter, Jr., Washington, D. C., for appellee, Hudock.

James P. Schaller, Washington, D. C., for appellee, Miskell.

Before TAMM and WALD, Circuit Judges and HAROLD H. GREENE *, United States District Court Judge for the District of Columbia.

Opinion for the Court filed by District Judge HAROLD H. GREENE.

HAROLD H. GREENE, District Judge:

The question presented by this case is whether the District of Columbia statute of limitations for a malicious prosecution action runs from the date on which the underlying, allegedly malicious, suit was brought or from the date when that suit

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

was terminated in favor of the defendant in that action.

On October 27, 1977, appellee Dona L. Miskell, with appellee Philip F. Hudock acting as her counsel, filed an action in the District Court charging appellant Isidore Shulman, M.D. with medical malpractice. Jurisdiction was based on diversity. 28 U.S.C. § 1332. The complaint sought both compensatory and punitive damages.[1] On June 30, 1978, the court entered a partial summary judgment dismissing the punitive damages claim. The compensatory damages claims were tried before a jury which on February 15, 1979, likewise found in favor of Dr. Shulman.[2]

■ On November 21, 1978, appellant brought an action for malicious prosecution in the Superior Court of the District of Columbia, contending that the claim for punitive damages had been brought maliciously and without probable cause. The action was removed to the District Court under 28 U.S.C. §§ 1441, 1446,[3] but the court dismissed it[4] on the ground that the one-year statute of limitations for malicious prosecution actions[5] had run.

Appellant urges that the District Court erred in computing the limitations period from October 27, 1977, when the malpractice action was brought, rather than from June 30, 1978, when the punitive damage claim was resolved by its dismissal by the trial judge.

■ At common law[6] and in jurisdictions everywhere in the United States termination of the underlying criminal or civil proceeding in favor of the defendant is an essential element of a malicious prosecution action. See 52 Am.Jur.2d Malicious Prosecution § 29 at n. 6, and cases cited therein; *Crescent Live Stock Co. v. Butchers' Union*, 120 U.S. 141, 7 S.Ct. 472, 30 L.Ed. 614 (1887); *Kedra v. City of Philadelphia*, 454 F.Supp. 652, 674 (E.D.Pa.1978); and see also cases cited at p. 175 *infra*.[7] This requirement has usually been explained on the theory that, if the malicious prosecution plaintiff were permitted to sue before he had prevailed in the original action, inconsistent judgment might be entered on the same question between the same parties— an obviously undesirable result. *Gordon v. West, supra; McMahon v. May Dept. Stores*, 374 S.W.2d 82 (Mo.1964).

1. The complaint alleged that Dr. Shulman had failed to follow the instructions of the patient's allergist and that as a result appellee Miskell suffered a severe reaction to an improperly administered injection.

2. Appellant's malicious prosecution complaint was based solely upon the prosecution by appellees of the punitive damage claim. That claim was fully disposed of on June 30, 1978, and we therefore need not consider the statute of limitations question by reference to the date of the jury verdict. Compare *Anderson v. Coleman*, 56 Cal. 124 (1880); *Gordon v. West*, 129 Ga. 532, 59 S.E. 232 (1907) with *Psaty v. Fifth Avenue & Ninety-Third Street Corp.*, 132 Misc. 278, 229 N.Y.S. 384 (1928) and *Rich v. Siegel*, 7 Cal.App.3d 465, 86 Cal.Rptr. 665 (1970). In any event, use of that date as the statute of limitations "trigger" would affect the result only insofar as the malicious prosecution action might be rejected as having been brought too early rather than too late.

3. Upon removal, the case was assigned to Judge Hart, before whom the underlying malpractice case was still pending.

4. Dismissals with prejudice were entered with respect to the claim against appellee Hudock on January 18, 1979, and with respect to the

claim against appellee Miskell on February 1, 1979.

5. D.C.Code § 12–301 provides that ". . . actions for the following purposes may not be brought after the expiration of the period specified below . . . (4) for . . . malicious prosecution . . . 1 year." Since the alleged tort occurred in the District of Columbia, we must, of course, apply District of Columbia law. *Erie RR v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Witherow v. Firestone Tire & Rubber Co.*, 530 F.2d 160 (3rd Cir. 1976).

6. Malicious prosecution existed as early as during the reign of Edward I, in the form of the writ of conspiracy aimed at combinations to abuse legal procedure. See, generally, Winfield, History of Conspiracy and Abuse of Legal Procedure (1921).

7. It is generally held that an essential difference between malicious prosecution and the tort of malicious use of process is that under the latter rubric it is not necessary to show that the underlying proceeding has been terminated. W. Prosser, Law of Torts § 121 (4th ed. 1971).

The District of Columbia, through decisions both of this court and of the District of Columbia Court of Appeals and its predecessors, has consistently followed the common law rule. See *Dellums v. Powell*, 182 U.S.App.D.C. 244, 566 F.2d 167 (1977); *Morfessi v. Baum*, 108 U.S.App.D.C. 303, 281 F.2d 938 (1960); *Moore v. Read*, 94 U.S. App.D.C. 153, 212 F.2d 810 (1954); *Melvin v. Pence*, 76 U.S.App.D.C. 154, 130 F.2d 423 (1942); *Chapman v. Anderson*, 55 App.D.C. 165, 3 F.2d 336 (1925); *S. Freedman & Sons v. Hartford Fire Ins. Co.*, 396 A.2d 195 (D.C.App. 1978); *Weisman v. Middleton*, 390 A.2d 996 (D.C.App. 1978); *Ammerman v. Newman*, 384 A.2d 637 (D.C.App. 1978); *Bumphus v. Smith*, 189 A.2d 130 (D.C.App. 1963); *Nolan v. Allstate Home Eq. Co.*, 149 A.2d 426 (Mun.App.D.C. 1959); *Horne v. Ostmann*, 35 A.2d 174 (Mun.App.D.C. 1944).

Under that rule and under the cases, a cause of action for malicious prosecution did not lie until Dr. Shulman prevailed on the punitive damage claim on June 30, 1978, and, had he filed that action prior to that date, it would have been subject to dismissal for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6); *Leggett v. Montgomery Ward & Co.*, 178 F.2d 436, 439 (10th Cir. 1949).[8] Thus, he could avoid a dismissal only by bringing his suit after June 30, 1978. Yet, if the District Court is correct, by that date eight months of the twelve-month limitations period had already run. Indeed, on the District Court's theory, if the punitive aspect of the malpractice action had, for one reason or another, been disposed of together with the remainder of the suit, that is, on February 15, 1979, the malicious prosecution action would have been barred by

limitations before it ever arose.[9] That cannot be, and it is not, the law.

D.C.Code § 12–301 provides that, with an exception not here relevant, the limitation period begins to run "from the time the right to maintain the action accrues." The District of Columbia Court of Appeals has interpreted that provision in the context of a malicious prosecution action to mean that the period begins to run "from the time that *all* the elements of the cause of action exist." *S. Freedman & Sons v. Hartford Fire Ins. Co.*, 396 A.2d at 198 (emphasis in original); see also *Carter v. S. N. McBride Co., Inc.*, 105 Wash.D.L.Rep. 1365 (D.C.Sup. Ct., Aug. 1, 1977), cited in *S. Freedman & Sons*.

Courts in other jurisdictions, with almost complete unanimity, have even more explicitly held that the malicious prosecution period of limitations is properly computed from the date of the disposition of the underlying civil or criminal action. See, *Jastrzebski v. City of New York*, 423 F.Supp. 669 (S.D.N. Y.1976) (New York); *Earl v. Winne*, 14 N.J. 119, 101 A.2d 535 (1953), followed in *Butler v. Sinn*, 423 F.2d 1116 (3d Cir. 1970) (New Jersey); *Securities Investment Co. v. Bennett*, 117 Ga.App. 415, 160 S.E.2d 602 (1968) (Georgia); *Rutherford v. Johnson*, 250 Cal. App.2d, 316, 58 Cal.Rptr. 546 (1967) (California); *Euge v. Lemay Bank and Trust Co.*, 386 S.W.2d 398 (Mo.1965) (Missouri); *Giordano v. Tullier*, 139 So.2d 15 (La.App. 1962) (Louisiana); *Sicola v. First National Bank of Altoona*, 404 Pa. 18, 170 A.2d 584 (1961) (Pennsylvania); *Barnette v. Woody*, 242 N.C. 424, 88 S.E.2d 223 (1955) (North Carolina); *Shuey v. Michigan*, 106 F.Supp. 32 (E.D.Mich.1952) (Michigan); *Wolfe v. Murphy*, 113 F.2d 775 (8th Cir. 1940), cert.

---

8. Cf. *Capital Elec. Co. v. Cristaldi*, 157 F.Supp. 646 (D.Md.1958); *French v. U. S. Fidelity and Guar. Co.*, 88 F.Supp. 714 (D.N.J.1950); Wright and Miller, Federal Practice and Procedure, Civil § 1246 (1969 ed.).

9. Appellees suggest that this concern may be accommodated by a rule which would require the malicious prosecution action to be filed within one year of the commencement of the underlying criminal or civil matter while deferring its trial until after the underlying matter had been decided. But this would mean—as

appellees recognize (brief, p. ——)—that the action would have to be filed not only before all of its elements could be *proved* but before they could even be *alleged*, thus giving rise to the problem discussed in the text to note 8, *supra*. Moreover, such a rule would tend to promote baseless lawsuits, for litigants would be encouraged to file malicious prosecution actions solely to avoid possible future limitations problems. See *Sicola v. First Nat. Bank*, 404 Pa. 18, 170 A.2d 584 (1961).

*denied,* 311 U.S. 700, 61 S.Ct. 138, 85 L.Ed. 454 (1940) (Iowa); *Allen v. Burdette,* 89 W.Va. 615, 109 S.E. 739 (1921) (West Virginia); *Levering v. Nat'l Bank of Morrow County,* 87 Ohio St. 117, 100 N.E. 322 (1912) (Ohio); *Luby v. Bennett,* 111 Wis. 613, 87 N.W. 804 (1901) (Wisconsin); but see *Violett v. Sympson,* 120 Eng.Rep. 128, 8 El. and Bl. 344 (1857) (England); *Evans v. Sturgill,* 430 F.Supp. 1209 (W.D.Va.1977) (Virginia).

The textwriters exhibit a similar understanding. Limitations-Malicious Prosecution, 87 A.L.R.2d 1047; Restatement of Torts (Second) § 899; Malicious Prosecution, 52 Am.Jur.2d § 115.[10]

With precedent and policy thus compelling one result, we would ordinarily end our analysis at this point. However, appellees have cited a fairly recent opinion of this court which appears to hold to the contrary.[11] In *Brewster v. Woodward & Lothrup, Inc.,* 174 U.S.App.D.C. 164, 530 F.2d 1016 (1976), we stated that a complaint which alleged false arrest, defamation, and malicious prosecution was barred by the statute of limitations because "actions for personal injuries accrue from the date of the wrong"; *i. e.,* from the date on which the allegedly malicious action was begun.

We have concluded that, notwithstanding F.R.App.P. 35(a) and D.C. Cir.R. 14(a)(3),[12] *Brewster* is not controlling for several reasons.[13] In the first place, the language in *Brewster* relating to the limitations problem may appropriately be considered as mere dictum since the plaintiff there could not have prevailed in any event because his claim was defective on its merits.[14] Moreover, while malicious prosecution is referred to in the *Brewster* opinion, the gravamen of the complaint, and the focus of this court's decision, were claims of false arrest and defamation. With respect to both of these tort claims, the limitations period was quite properly considered to run from the date of the original arrest.[15] Finally, it is significant that we are here construing not federal law but District of Columbia law with respect to which we are of course obligated to follow the local decisions in any event.[16] Our review of the District of Columbia cases, including those decided subsequent to *Brewster,*[17] convinces us that in the District the statute of limitations for malicious prosecution actions begins to run from the time the underlying criminal or civil actions is disposed of in favor of the malicious prosecution plaintiff. Upon that basis, the statute of limitations had not yet run when appellant brought the instant action.

The judgment of the District Court is reversed and the case is remanded with instructions to reinstate the complaint.

*Reversed.*

---

**10.** On similar reasoning, the courts have held premature malicious prosecution counterclaims to various kinds of civil actions. See *Kalso Systemet, Inc. v. Jacobs,* 474 F.Supp. 666 (S.D. N.Y.1979); *Kaye v. Pantone, Inc.,* 395 A.2d 369 (Del.Ch.1978); *Greer v. State Farm Fire and Gas Co.,* 139 Ga.App. 74, 227 S.E.2d 881 (1976); *Niedringhaus v. Zucker,* 208 S.W.2d 211 (Mo. 1948); cf., Note, Counter Claim for Malicious Prosecution in the Action Alleged to be Malicious, 58 Yale L.J. 490 (1949).

**11.** Inasmuch as that case was brought to the attention of the District Court, it may be assumed that it relied upon it for its decision.

**12.** These Rules prescribe that a decision of a division of the court may not be overruled by another division, but only by the court sitting *en banc.*

**13.** See, *City of LaFayette v. Louisiana Power and Light Co.,* 532 F.2d 431, 435 (5th Cir. 1976); *Davis v. Estelle,* 529 F.2d 437, 441–43 (5th Cir. 1976); *North Carolina Utilities Commission v.*

*Federal Communications Commission,* 552 F.2d 1036, 1045 (4th Cir. 1977).

**14.** The plaintiff had been convicted in the criminal prosecution which formed the substantive basis for his civil cause of action.

**15.** See, *Shehyn v. District of Columbia,* 392 A.2d 1008, 1013 (D.C.App. 1978); *Bair v. Bryant,* 96 A.2d 508, 510 (D.C.Mun.App. 1953); *Ogden v. Association of United States Army,* 177 F.Supp. 498 (D.D.C. 1959); Libel-Publication-Limitation Period, 42 A.L.R.3d 807, 815, 828.

**16.** See note 5 *supra*; see also, *Nature Conservancy v. Machipongo Club, Inc.,* 579 F.2d 873 (4th Cir. 1978), cert. denied, 439 U.S. 1047, 99 S.Ct. 724, 58 L.Ed.2d 706 (1978).

**17.** See *S. Freedman & Sons v. Hartford Fire Ins. Co.,* supra, and *Carter v. S.N. McBride Co., Inc.,* supra.