## DISTRICT OF COLUMBIA, et al., Appellants,

v.

## Fred GANDY, Jr., Appellee.

### No. 79–947.

District of Columbia Court of Appeals.

Argued April 21, 1982.

Decided Sept. 22, 1982.

William S. Earl, Asst. Corp. Counsel, with whom Judith W. Rogers, Corp. Counsel,

Charles L. Reischel, Deputy Corp. Counsel, and David P. Sutton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellants.

Wiley A. Branton, Jr., with whom Wiley A. Branton, Sr., Washington, D. C., was on the brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and FERREN, Associate Judges.

KELLY, Associate Judge:

This appeal follows the entry of judgment on a jury verdict against appellants, the District of Columbia and Metropolitan Police Officers Richard M. Gaydovchik and James M. Giovannini, awarding appellee $275,000 in compensatory damages for false arrest and assault and battery. The issues are whether the trial court erred in permitting appellee to introduce proof that the criminal charges resulting from the events giving rise to his civil claims were dropped; whether the court erred in failing to rule as a matter of law, and to so instruct the jury, that there was an articulable suspicion of criminal activity which justified stopping appellee and transporting him to a nearby bank for a showup; and whether the verdict was grossly disproportionate to appellee's injuries, tainted by passion and prejudice, and punitive in nature. We affirm.

At about 2:30 p. m. on Thursday, September 25, 1975, there was a robbery of the First National Bank, 1011 Connecticut Avenue, N. W., Washington, D.C. Appellants Gaydovchik and Giovannini, working in plain clothes, monitored police radio broadcasts reporting the robbery and describing the suspect. Believing, as they said, that appellee was the suspect, the individual appellants stopped him on the corner of 18th and I Streets, N. W., and put him in their unmarked police cruiser to take him to the bank for a showup. En route there was a scuffle between appellee and appellant Gaydovchik, both of whom were seated in the back seat of the vehicle. There was testimony that the driver, appellant Giovannini, stopped the car and joined the fight. Officer Lawrence Cunningham, another plain

clothes policeman at the scene, ran up to the car and opened the left rear door, causing appellee to fall out of the car and onto the ground. Appellee was handcuffed and taken to the bank where witnesses confirmed that he was not the robber. Appellee was nonetheless taken to the Second District Station House, charged with two counts of assaulting a police officer, and placed in a holding cell. The next day, after his presentment, appellee was released in third party custody. The week after he sought medical attention for his injuries suffered at the hands of the police. Several weeks later appellee was notified at a preliminary hearing that the Assistant United States Attorney had dropped the charges against him.

## I

Appellants contend that the court erred in admitting at trial evidence showing that the criminal charges against appellee were dropped. Evidence that charges were not brought has been held inadmissible in a civil case arising out of the same events as the criminal charges. *Nadler v. Home Insurance Co.,* 339 So.2d 280 (Fla.App.1976); *Galbraith v. Hartford Fire Insurance Co.,* 464 F.2d 225 (3d Cir. 1972); *Napolitan v. Happe,* 288 Pa.Super. 468, 432 A.2d 608 (1981). The rationale of those cases is that the jury in the civil case may mistakenly consider the decision not to prosecute as dispositive of the issue of fault. *MacNeil v. Singer,* 389 So.2d 232, 234 (Fla.App.1980), citing *Albertson v. Stark,* 294 So.2d 698, 699 (Fla.App. 1974), and may prejudicially tip the balance in the jurors' minds.[1] *See Eggers v. Phillips Hardware Co.,* 88 So.2d 507, 508 (Fla. 1956) (en banc).

■ Nevertheless, in a suit for false arrest when, as here, an affirmative defense of justification based on probable cause is raised, evidence of the subsequent dismissal, acquittal or reversal on appeal of criminal charges is admissible to refute the defense. *Broughton v. State of New York,* 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87, 95, 335 N.E.2d 310, 315, *cert. denied sub nom. Schanbarger v. Kellogg,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975).

Moreover, the evidence is probative on the issue of damages to prevent jury speculation as to the disposition of the charges, including the inconvenience and worry of defending one's self against criminal charges and the expenses of hiring an attorney.[2] Thus, the evidence was helpful to appellants since it proves that appellee had to face criminal charges for only a two week period before learning of their dismissal.

## II

Appellants also contend that the trial court erred in failing to find and to instruct the jury that appellee's initial detention and transportation to the bank for a showup were justified as a matter of law because the individual appellants had a reasonable articulable suspicion of appellee's recent involvement in criminal activity.

■ The gist of a claim of false arrest (or false imprisonment) is an unlawful detention, *Faniel v. Chesapeake & Potomac Telephone Company of Maryland,* D.C.App., 404 A.2d 147, 150 n.8 (1979); *Clarke v. District of Columbia,* D.C.App., 311 A.2d 508, 511 (1973), depriving the plaintiff of his freedom of locomotion for any length of time by force or threat of force. *Marshall*

---

1. There may be many reasons not to prosecute, but nonprosecution is not evidence of the faultlessness of the individual charged. *Simpson v. Robinson,* 238 Pa.Super. 555, 557, 361 A.2d 387, 388 (1976), citing *Patton v. Franc,* 404 Pa. 306, 172 A.2d 297 (1961). Non-prosecution is at best evidence that in the prosecutor's opinion, not based on personal knowledge, the individual did not commit the crime; it would thus be inadmissible under the opinion rule and the rule requiring that a witness have personal knowledge. *See Galbraith v. Hartford Fire Insurance Co., supra* at 227–28.

2. "[J]uries cannot be allowed to speculate. They may deduce but not guess, though the line between the two is sometimes hard to discern. *Seganish [v. District of Columbia Safeway Stores, Inc.,* 132 U.S.App.D.C. 117, 120, 406 F.2d 653, 656 (1968)]." *Johnson v. Safeway Stores, Inc.,* D.C.App., 265 A.2d 596, 597–98 (1970).

*v. District of Columbia,* D.C.App., 391 A.2d 1374, 1380 (1978). Unlawfulness may be presumed when the arrest and imprisonment are warrantless. *Broughton v. State of New York, supra.* The plaintiff must prove that the defendants intended to detain him and that their actions or words "furnish[ed] a basis for a reasonable apprehension of present confinement."[3] *Marshall v. District of Columbia, supra* at 1380.

■ It is undisputed in this case that the officers detained appellee without a warrant.[4] But police officers are privileged to stop persons when they have a reasonable articulable suspicion that the person is or was engaged in criminal activity. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Childs,* D.C.App., 379 A.2d 1188, 1190 (1977), citing *Cooper v. United States,* D.C.App., 368 A.2d 554, 556 (1977). The purpose of this privilege is to enable police officers to maintain the status quo while gathering more information. *Adams v. Williams, supra,* 407 U.S. at 146, 92 S.Ct. at 1923. In addition, a police officer can conduct a limited protective search for weapons when he "is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Id.,* quoting *Terry v. Ohio, supra,* 392 U.S. at 24, 88 S.Ct. at 1881. The reasonableness of a particular search or seizure is determined by an objective standard: whether "the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Terry v. Ohio, supra* at 21–22, 88 S.Ct. at 1879–1880 (citations omitted). In the instant case, we are considering the reasonableness of the "seizure" of appellee. Appellants have a valid defense if they can prove that Officers Gaydovchik and Giovannini had a reasonable articulable suspicion that appellee was the bank robbery suspect.

■ The trial court must deny a motion for judgment notwithstanding the verdict unless the evidence, when viewed in the light most favorable to the non-moving party with all reasonable inferences drawn therefrom, is so clear that reasonable men could reach but one conclusion. *Corley v. BP Oil Corp.,* D.C.App., 402 A.2d 1258, 1263 (1979) (citations omitted). When there is "some evidence from which jurors could find the necessary elements," *Marshall v. District of Columbia, supra* at 1379, or when the case turns on disputed facts and witness credibility, *Corley v. BP Oil Corp., supra,* the case is for the jury.[5]

Viewing the evidence in the light most favorable to the appellee, the evidence showed that appellants Gaydovchik and Giovannini heard a radio broadcast for a bank robbery suspect. Officer Gaydovchik testified that the lookout was for "a Negro male in a brown suit or tan suit, ... running through the alley in the rear of the 1700 block of I Street, N.W." Appellant Giovannini testified that the lookout was for "a Negro male wearing a tan suit, carrying a bag, last seen south on Connecticut Avenue." He also heard a scooterman broadcast that the suspect was going into the alley. Officer George McCann testified that the lookout described the suspected robber as "a Negro male in his twenties, approximately five-eight to five-nine, wearing a brown jacket and brown pants. Last seen out of the bank." He heard a later broadcast saying that someone fitting that description was just seen "running in the

---

3. "The essential elements of the tort [of false imprisonment] are (1) the detention or restraint of one against his will, within boundaries fixed by the defendant, and (2) the unlawfulness of the restraint. *See Tocker* [*v. Great Atlantic & Pacific Tea Co.,* D.C.App., 190 A.2d 822, 824 (1963)]." *Faniel v. Chesapeake & Potomac Telephone Company of Maryland, supra* at 150.

4. Detention which constitutes false imprisonment may occur within a traveling automobile. *Id.* at 151.

5. The standard for review of motions for directed verdict and judgment notwithstanding the verdict are the same. Thus, *Corley* and *Marshall,* which refer to directed verdict motions, are apposite. *District of Columbia v. Jones,* D.C.App., 265 A.2d 594, 595 (1970).

alleyway somewhere in the area of the 1700 block of I Street, N.W." Officer McCann's partner, Officer Walltower, testified that he thought the flash lookout was for a "Negro male in the twenties."

Appellee is a black male, five feet ten inches tall. He was 38 years old and that day was wearing tan trousers, a red turtleneck shirt, and a three quarter length tan leather coat. Appellant Giovannini admitted that appellee was not carrying a bag. Appellant Gaydovchik testified that he observed appellee constantly looking up and down the street over his shoulder and walking towards the southwest corner of 18th and I Streets. He thought appellee was looking back at a marked scout car. He observed appellee stop at a traffic light, go into the Dart drug store, exit with his jacket rolled up under his right arm, and continue walking east on I Street, N.W. He testified that appellee did not appear to be physically exhausted and he did not notice appellee perspiring.

Appellee testified that he had left his hotel and had gone to the Dart drug store to buy a Wall Street Journal. An employee at the entrance to the store said that it did not carry that paper and directed him to another store down the street. When approached by appellants Gaydovchik and Giovannini, appellee repeatedly asked who they were, what they wanted from him, and where they were taking him. Two eyewitnesses testified that appellee protested that they must have the wrong man because he had recently arrived in Washington, and Officer Gaydovchik testified that appellee protested that he was being harassed only because he is black. Officer McCann testified that appellant Giovannini patted appellee down, found his money, and held it up saying something about getting the money. Appellant Gaydovchik testified on direct examination that appellant Giovannini and he seized money from appellee's pocket, but on cross-examination he testified that appellee took the money from his own pocket. The frisk revealed that appellee was unarmed.

In sum, appellants Gaydovchik and Giovannini found an unarmed black male wearing tan slacks and a tan coat, carrying approximately $740 who did not look exhausted, as if he had been running, and who was loudly protesting his abduction. Under these facts, whether appellee sufficiently matched the broadcast description of the suspect to give appellants Gaydovchik and Giovannini a reasonable articulable suspicion of appellee's involvement in the bank robbery to justify his detention and transportation to the bank for identification is not so clear that reasonable men could reach but one conclusion. Accordingly, we hold that the trial court properly submitted the issue to the jury.

### III

Finally, appellants argue that the jury verdict is excessive as a matter of law because it bears no reasonable relationship to the injuries proved, is tainted by passion and prejudice, and is punitive in nature.

A plaintiff who has established liability for false arrest and [assault and] battery, is entitled to nominal damages plus compensatory damages for psychological harm and "mental suffering including fright, shame and mortification from the indignity and disgrace consequent upon illegal detention," *Marshall v. District of Columbia, supra* at 1380 (citations omitted), and humiliation, discomfort and distress. *Stewart v. United States,* 428 F.Supp. 321, 324 (D.D.C.1976). "The award must be proportional to the loss involved insofar as it seeks to compensate intangible injuries," *Dellums v. Powell,* 184 U.S.App.D.C. 275, 303, 566 F.2d 167, 195 (1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), but need not be susceptible of computation with exactitude. *Spar v. Obwoya,* D.C.App., 369 A.2d 173, 180 (1977). The amount of recovery is fixed in the sound discretion of the trier of fact, *see Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed.2d 544 (1931), and the trier of fact may make reasonable inferences from the evidence. *Edmund J. Flynn Co. v. LaVay,* D.C.App., 431 A.2d 543, 550 (1981).

In reviewing a motion for a new trial based upon a claimed excessive verdict, the trial court asks whether the verdict is "beyond all reason, or . . . is so great as to shock the conscience" or "is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate." *Wingfield v. Peoples Drug Store, Inc.,* D.C.App., 379 A.2d 685, 687 (1977) (citations omitted). In addition, a damage award should be set aside when "on the totality of facts before it," *May Department Stores Co. v. Devercelli,* D.C.App., 314 A.2d 767, 775 (1973), it indicates passion or prejudice or that it was based on an improper element. *Hughes v. Pender,* D.C.App., 391 A.2d 259, 263 (1978); *Spar v. Obwoya, supra; May Department Stores Co. v. Devercelli, supra* at 775 (passion, prejudice or mistake). Even though we may consider the verdict for compensatory damages to be larger than it should have been, and think that it might have been reduced by the trial court, we do not reverse unless in failing to do so the trial court has abused its discretion. *See May Department Stores Co. v. Devercelli, supra* at 775; *City Stores Co. v. Gibson,* D.C.App., 263 A.2d 252, 253 (1970).[6]

Appellee testified that as he was leaving the Dart drug store, in search of a newspaper, he was suddenly accosted by two strangers, subjected to denigrating remarks and virtually kicked into their car. His protests and questions were met with the response, "nigger we ain't got time to be explaining nothing, you get your ass in the car," and "nigger, shut your mouth, shut up. Just shut up." The two never identified themselves as police officers, and appellee thought he was being kidnapped. Appellant Gaydovchik, seated beside him in the rear seat of the car, began hitting him; appellant Giovannini stopped the car, got onto his knees in the front seat and began beating him over the back of the seat. Appellee testified that he exerted no hostile behavior towards the policemen/attackers; rather he crouched against the door of the car trying to protect himself from the as-

sault. Someone opened the door from the outside and he suddenly fell out of the car onto the pavement where people stood over him kicking and hitting him for one to two minutes. He was then snatched from the ground, thrown against the car and handcuffed. It was then that appellee first saw a uniformed police officer. Appellee was escorted in a marked police car to a bank where he heard a voice say that he was not the person they were looking for. Appellant Gaydovchik nonetheless replied, "book him anyway for assault on a police officer."

At the police precinct appellee was photographed, fingerprinted and questioned. Upon learning that he was a visitor to the District of Columbia, hoping to secure a job with the foreign service, the police officers taunted him by calling him a police beater and saying, "nigger, you can just forget any kind of job with the foreign service . . . because . . . you've hit police officers now." Appellee testified that he considered this to be a mild form of brainwashing because the officers were trying to make him believe a falsehood—that he had beaten policemen. This taunting devastated appellee because he had spent almost his entire adult life preparing for a position with the foreign service. He saw his schooling, the money his parents supplied him for tuition, and his dreams "go[ing] down the drain" in one day's time. Appellee was jailed for 24–26 hours. He described it as dirty and nasty, and said he was unable to sleep. Upon his release the next day, he was given his personal property but his cash was not immediately returned to him.

Appellee said he endured excruciating pain from his injuries and testified that for a time he could not raise his arm, twist his body or bend over. He was confined to bed for about one week and was unable to totally rest and sleep for about one month. His medical expenses were $106. Although his physical problems have ended, he feels that emotionally he will never get over the incident and will always have fears.

6. Appellants did not request a remittitur.

Appellee was 38 years old when these events occurred. He holds a Bachelor's degree, two Master's degrees and has served as a Peace Corps volunteer. He had never before been arrested or charged with an offense. Because of this incident, appellee has a permanent arrest record in the District of Columbia.

Considering appellee's testimony, which apparently was credited by the jury, we cannot say that the trial court abused its discretion in denying the motion for a new trial. Moreover, the testimony, and the arguments of counsel were presented in a professional manner and we find no evidence that the verdict was infected with passion or prejudice. Finally, we conclude that the award was not punitive in nature in light of appellee's severe injuries.[7]

*Affirmed.*

---

7. The jury was not instructed on the issue of punitive damages.